ARDEN v. BOONE. (No. 8374.)*

(Court of Civil Appeals of Texas. Ft. Worth. May 20, 1916. On Motion for Rehearing, July 1, 1916.)

1. REFORMATION OF INSTRUMENTS ⬦➝16 — GROUNDS.

Before equity will interpose to change the terms of a written instrument as not expressing the real agreement, it must appear that the terms sought to be changed were inserted through accident, fraud, or mutual mistake, or, if the mistake is unilateral, it must be material, going to the substance of the contract, and not the result of negligence.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. § 68; Dec. Dig. ⬦➝ 16.]

2. REFORMATION OF INSTRUMENTS ⬦➝25—DEFENSE—WANT OF DILIGENCE.

Equity will relieve from the terms of a contract for unilateral mistake only if it arises through no want of ordinary care or diligence on complainant's part.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 84–90; Dec. Dig. ⬦➝25.]

3. REFORMATION OF INSTRUMENTS ⬦➝25 — DEFENSES—NEGLIGENCE.

Where a party executed a preliminary contract and accepted a deed providing for his keeping open a permanent roadway on land conveyed in the absence of showing of fraud or excuse for failure to read the two instruments, reformation thereof could not be had on the ground of accident, fraud, or mistake.

[Ed. Note.—For other cases, see Reformation of Instruments, Cent. Dig. §§ 84–90; Dec. Dig. ⬦➝25.]

4. DEEDS ⬦➝90 — CONSTRUCTION — FAVORING GRANTEE.

Where there is doubt as to the meaning or purport of the terms used in a deed, the construction most favorable to grantee should be applied.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 234–237, 247, 248; Dec. Dig. ⬦➝90.]

5. DEEDS ⬦➝139 — CONSTRUCTION — REPUGNANCY.

The exception of land required to make the full acreage conveyed under general warranty deed will be rejected as repugnant to the grant.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 458, 459; Dec. Dig. ⬦➝139.]

6. EASEMENTS ⬦➝14(2) — RESERVATION OF ROADWAY — "RESERVATION" — "EXCEPTION."

Where a certain acreage is conveyed with stipulation that grantees should keep open a permanent roadway 15 feet wide on the side of the tract conveyed, the strip of roadway being necessary to make the full acreage conveyed, the stipulation should be construed as a reservation of an easement, and not as an exception of an open lane, since a reservation is the creation in behalf of the grantor of a new right issuing out of a thing granted, something which did not exist as an independent right before the grant, while an exception operates to withdraw some part of the thing granted which would otherwise have passed to the grantee under the general description.

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 40; Dec. Dig. ⬦➝14(2).

For other definitions, see Words and Phrases, First and Second Series, Exception; Reservation.]

7. DEEDS ⬦➝120—CONSTRUCTION—FAVORING GRANTEE.

A deed will be construed to give the largest estate under the terms of the grant.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 375–393, 401, 407–412, 416–454; Dec. Dig. ⬦➝120.]

8. EASEMENTS ⬦➝61(9)—ACTION TO ESTABLISH—EVIDENCE—"KEEP."

In a suit to require grantee to remove gates on a roadway, the deed stipulating that grantee was "to keep open for a permanent roadway 15 feet wide on the extreme east of" the tract conveyed "so that the said" grantor "may have access to the public road," evidence that gates were, for a long time prior to the sale, used at both ends of the strip as means of affording the grantor access to the public road, and that the land was in the country, warranted a decree for defendant, since, under the circumstances disclosed the grantee would "keep open" such passway, although maintaining gates, since the word "keep" is properly defined "to maintain; to cause to continue without essential change of condition."

[Ed. Note.—For other cases, see Easements, Cent. Dig. § 143; Dec. Dig. ⬦➝61(9).

For other definitions, see Words and Phrases, First and Second Series, Keep.]

Appeal from District Court, Baylor County; J. A. P. Dickson, Judge.

Suit by J. C. Arden against O. A. Boone. From a decree for respondent, complainant appeals. Affirmed.

Milam & Wheat, of Seymour, and Speer & Brown, of Ft. Worth, for appellant. Glasgow & Kenan, of Seymour, for appellee.

BUCK, J. On January 29, 1913, by a general warranty deed, appellant conveyed to appellee 100 acres of land off the south side of a 220-acre tract, said deed containing the following provisions, to wit:

"It is understood and agreed as a part of the consideration for this land that the said O. A. Boone, his heirs and assigns, are to keep open for a permanent roadway 15 feet wide on the extreme east of said 100-acre tract hereby conveyed, so that the said J. C. Arden and his assigns may have access to the public road from the land on the north of said 100-acre tract."

At the time of this conveyance there were gates at the northern and southern extremities of this 15-foot strip used as a passway, and appellee continued the use of these gates until June 17, 1915, when appellant filed this suit, the purpose of which was to require appellee to remove the gates, and to "keep said roadway open and unobstructed at all times in the future."

Appellee, defendant below, in his answer pleaded:

(1) That the understanding between the "parties was that plaintiff for himself and his assigns was to have a passway over the east 15 feet off 'of said 100 acres of land for the purposes simply of ingress and egress to the land out of said tract reserved by plaintiff; that it was never in contemplation of the parties in making said deal and trade that the passway mentioned in said deed should be a passway free of obstructions

and gates, but, on the contrary, it was perfectly understood by defendant, and he supposes plaintiff so understood, that plaintiff was only to have for himself and his assigns the right for convenience to pass over said 15 feet of land for the sole purpose of ingress and egress to the land reserved by plaintiff on the north of said 100-acre tract sold by him to this defendant."

(2) That the word "open," as used in said deed and contract between the parties with reference to the passway, "if the same is to be construed as a passway free of gates and obstruction, was never at and before the time of closing the trade, or at any other time, agreed and understood between the parties, but the same was error in the reduction of the agreement to the written instrument, and said term 'open' is contrary to the common intention and understanding of the parties."

(3) Defendant further pleaded the presence of the gates at the beginning of the negotiations and before the preliminary written contract was made, and that plaintiff told defendant's agent, Eddleman (who seems to have conducted practically all of the negotiations of trade with plaintiff), that he only wanted a passway, and that no statement was used or stipulation made by plaintiff in the course of such negotiations indicating any intention to reserve and require a roadway free of gates.

(4) That for more than 12 months after the execution of the deed plaintiff acquiesced in the use of the gates and in the construction of the term "open roadway" as meaning one with gates.

Defendant further averred that the gates were maintained and would continue to be maintained in good order for the free use of plaintiff and his assigns.

The case was submitted to the jury on three special issues, and in answer to them the jury found:

(1) That neither defendant, Boone, nor his agent, Eddleman, knew of the condition in the deed that provided for an open road on the land in controversy at the time of the execution or delivery of the deed.

(2) That the deed did not express the understanding and agreement of the parties with reference to the road or passway.

(3) That it was the intention and understanding between the parties at the time of the execution of the contract of sale and at the time of the execution of the deed that a passway with gates be reserved.

Upon this verdict of the jury the court entered judgment for defendant, and plaintiff appeals.

Appellant presents in his brief some 12 assignments, all of which we have considered with due care, but we believe there is presented only one main question for our determination, to wit: Is the above-quoted language used in the deed susceptible of the construction that the roadway reserved might be one inclosed by gates? If yea, the judgment should be affirmed. If nay, the judgment should be reversed.

[1, 2] While the jurisdiction or power of courts of equity to relieve against mistakes has always been recognized, and where, because of mistakes, a contract is made to appear different from that intended by the parties, equity will interpose to prevent manifest injustice, yet, where parties to a contract have reduced to writing the terms thereof, before the power of a court of equity may be invoked to vary the terms of such written instrument, on the ground that the recitations do not express the real agreement of the parties, it must be made to appear: (1) That the recitation sought to be changed was inserted through accident, fraud, or mutual mistake; (2) or, if the mistake be unilateral, such mistake must be material, going to the substance or essence of the contract, and arising through no want of ordinary care or diligence on the part of him who seeks to avail himself thereof, and then may be ground only for rescission, not for reformation. 6 R. C. L. p. 623, § 42; 1 Elliott on Contracts, p. 195, § 112, citing Moffett, Hodgkins & Clarke Co. v. Rochester, 178 U. S. 373, 20 Sup. Ct. 957, 44 L. Ed. 1108. If a contract is plain and unequivocal, the person signing it or accepting it after it is signed by the other party, as in the case of a deed, is ordinarily bound by its terms, even though he did not, in fact, read the instrument before signing or receiving it. This is particularly true where the party complaining was able and had the opportunity to read the instrument, but neglected to do so. 6 R. C. L. p. 624, § 43; Box Co. v. Spies, 109 S. W. 432.

[3] The evidence shows that the preliminary contract executed by the parties contained the same provisions as to keeping "open" a "permanent roadway," as included in the deed. No reason or excuse is shown for the defendant's failure to read the two instruments, and to discover the use of such terms. It was shown that the original contract was signed by plaintiff and defendant's agent and son-in-law, Eddleman, and delivered to Boone, who "delivered it to the clerk's office"; that the deed was delivered to defendant, who had it filed for record. No pleading or proof is made as to any fraud on the part of plaintiff in having the word "open," as applied to the roadway, inserted in the contract and deed. Therefore we are of the opinion that the judgment cannot be supported on the grounds of accident, fraud, or mistake, whether the mistake claimed be bilateral or unilateral. Hence we are reduced to the single proposition stated above.

[4-7] While the defendant does not in so many words plead that the expression "to keep open for a permanent roadway" is ambiguous, so as to make parol evidence admissible to show what, in fact, was understood and meant by the parties in its use,

yet we are of the opinion that defendant's pleading may reasonably be interpreted as alleging an ambiguity in this respect, and therefore extrinsic evidence was admissible to shed light upon the sense in which the expression was used and understood by the parties. Moreover, the intention of the parties in inserting this reservation may be gathered from the instrument itself. The reason for the reservation is recited to be "so that J. C. Arden and his assigns may have access to the public road from the land on the north of the said 100-acre tract." Certainly by the use of the roadway inclosed by gates "access to the public road" could be had. Even the word "free" or "unobstructed" was not used to limit or further determine the nature of the access to be reserved. It is a well-recognized rule of construction of deeds that, where there is doubt as to the meaning or purport of the terms used, the construction most favorable to the grantee should be applied. 8 R. C. L. p. 1088, § 145; Wofford v. McKinna, 23 Tex. 36, 76 Am. Dec. 53; McBride v. Burns, 88 S. W. 398. Likewise, since this strip of land 15 feet wide was a part of the 100 acres paid for by and conveyed to the grantee, it must be held that some right in or title to this strip was meant to be conveyed. Wofford v. McKinna, supra. If more than an easement over and within this strip was intended, and it required this strip to make the 100 acres conveyed under the general warranty deed, then such reservation might be rejected as a repugnancy under the authority of Koenigheim v. Miles, 67 Tex. 113, 122, 2 S. W. 81; McDaniel v. Puckett, 68 S. W. 1007; Puckett v. McDaniel, 96 Tex. 94, 70 S. W. 739. To sustain the stipulation, it should, be, under the authorities cited, construed to be only a reservation, and not an exception.

"A reservation is the creation in behalf of the grantor of a new right issuing out of a thing granted, something which did not exist as an independent right before the grant; while an exception operates to withdraw some part of the thing granted which would otherwise have passed to the grantee under the general description." 8 R. C. L. p. 1090, § 147.

It is further a well-established rule that a deed will be construed to convey the largest estate possible under the terms of the grant. Hancock v. Butler, 21 Tex. 804, 811; Cartwright v. Trueblood, 90 Tex. 535, 537, 39 S. W. 930; Calder v. Davidson, 59 S. W. 300, 302, affirmed in 94 Tex. 689; Schaffer v. Heidenheimer, 43 Tex. Civ. App. 366, 96 S. W. 61, affirmed in 101 Tex. 658.

[8] Looking to the evidence, Eddleman testified that:

"In negotiating this deed [deal] and trade between Mr. Arden and Mr. Boone, there was not anything said by me or Mr. Arden with reference to leaving the passway there open and unobstructed by gates. * * * Mr. Arden came out to see me and wanted to close the trade with me for Mr. Boone, and said that he wanted to reserve a passway of 15 feet. I said: 'I object to that. You let Mr. Boone go down on your grass land enough to make up

for the 15 feet; you keep the 15 feet.' Mr. Arden said: 'No; I want to deed him the full 100 acres, just reserve a passway out.'"

Plaintiff testified that he sold Boone the 100 acres. E. M. Stone, who was negotiating for the land just prior to the purchase by Boone, testified that in the conversations with plaintiff the latter only stipulated that he have a passway on the east of the 100 acres; that he said "he wanted a way to get through there." Stone further testified:

"There was nothing in the negotiations between me and Mr. Arden with reference to this land, with reference to a lane, or open road on the east of this 100 acres."

Defendant testified to the same effect as to the conversations had between him and plaintiff. Both defendant and Eddleman testified that the first notice that they had of plaintiff's claim for a roadway free of gates, or a lane, was some year and a half after the deed was delivered. This is a strong circumstance tending to support defendant's alleged understanding of the contract and to show a concurrence by plaintiff in the construction of the contract claimed by defendant, or at least an acquiescence therein. It is true that plaintiff testified to a conversation claimed to have been had with defendant shortly after the sale was made in which the former broached the subject of establishing the division line, but he admits that he said nothing to defendant about any lane until about a year after the deed was passed, and then, he says, "he [Boone] seems to think I was talking about another fence."

The Standard Dictionary defines "open" as:

"Easy of or affording an approach, view, passage, or access, because of the absence of something that shuts out, covers, etc.; not surrounded by barriers or prohibitive restrictions; uninclosed; free of access and use; public, as an open common; affording free passage or flow; unobstructed; also unclosed, as an open wound, an open bottle, an open door."

We are not prepared to say that, in view of the definitions and meanings given above one who places at either extremity of a passway gates without locks or difficult fastenings does not "keep open" such passway; nor, in our judgment, can it reasonably be claimed that because a roadway is inclosed by gates, it is not a "permanent" roadway. Third class roads established by and maintained under the authority of the law may be enclosed by gates.

While we are inclined to conclude that the special issues Nos. 1 and 2 were not required or proper to be submitted, yet we are of the opinion that the judgment must be sustained, and that it was authorized by the facts of the case and by the finding of the jury in answer to special issue No. 3. All assignments are overruled.

Judgment affirmed.

### On Motion for Rehearing.

While we are aware that ample authority can be found to sustain the contention, urgently insisted upon in appellant's motion

for rehearing, that the expression "open way" ordinarily means a passway without gates, and that such construction is sustained either directly or by implication in the following cases among those cited by appellant, to wit: Boyd v. Bloom, 152 Ind. 152, 52 N. E. 751; Gibbons v. Ebding, 70 Ohio St. 298, 71 N. E. 720, 101 Am. St. Rep. 900; Mineral Springs Mfg. Co. v. McCarthy, 67 Conn. 279, 34 Atl. 1043; Goodale v. Goodale, 107 Me. 301, 78 Atl. 567; Garland v. Furber, 47 N. H. 301; Welch v. Wilcox, 101 Mass. 162, 100 Am. Dec. 113; Maxwell v. McAtee, 9 B. Mon. (Ky.) 20, 48 Am. Dec. 409; Methodist Protestant Church v. Laws, 4 O. C. D. 562, 48 L. R. A. (N. S.) 87, note—yet we are still of the opinion that in view of the terms of the paragraph of the deed containing the reservation, quoted in our original opinion, parol testimony was admissible to determine the construction put upon the terms used at the time by the parties to the contract and deed, and that such parol testimony was sufficient to sustain the construction reflected by the verdict and judgment.

It will be remembered that the expression "open way" is not used in the deed, but the obligation is placed on the grantor to " 'keep open' for a permanent roadway" the strip described. "To keep," in the sense here used, may properly be defined, as in the Standard Dictionary, "to maintain; to cause to continue without essential charge of condition." For a long period prior to the sale gates had been used at the termini of this strip as a means of affording the grantor access to the public road from his house. Is it not a reasonable and permissible construction to say that in the use of the expression "to keep open for a permanent road way" the grantor meant, and the grantee understood him to mean, that the passway should be maintained in the condition it was in at the time of the sale of the land? Evidently both parties traded and made that contract and acquiesced in the deed containing this reservation, with the knowledge of the conditions as they existed at the time and had existed theretofore with reference to the presence of gates. Garland v. Furber, supra. Moreover, in construing the terms of a deed and of a reservation therein, it is permissible to take into consideration the character of the premises conveyed, and the sense in which the word or words is or are used with a reference thereto. As said in the case of Collins v. Degler, 74 W. Va. 455, 82 S. E. 265, whether the grantee of a right of way is entitled to a way unobstructed by gates depends upon the terms of the grant, the purposes for which it was made, the character and situation of the property, and the manner in which the way has been opened. Jones on Easements, § 400. Quoting from the cited case:

"Persons in a city do not ordinarily think of an alley as a way inclosed by gates. The use of the word 'alley' in connection with a city lot carries with it the idea of an open way, such as almost invariably pertains to city property. But not so as to the use of the words 'right of way' as applied to ingress and egress over farming lands. Nor even so as to the use of the words 'free right of way' as applied to such lands. We must give to words the meaning that they imply from their use in relation to certain subject-matter. There is freedom in the country through gates that by no means would be called freedom in the city. Conditions and usages necessarily make it so. When plaintiff took a deed for the parcel, the road referred to in the deed had gates and bars across it. Yet it appears that the public freely traveled that road. * * * The use of the words 'right of way' indicates retention of the ownership and use of the soil except as interfered with by passage over the right of way. If the parties meant a lane, why did they not use the term? The grant of a right of way merely does not deprive the grantor of uses of the way consistent with the right he has granted. It is the grant of an easement only, not of the land itself."

The motion for rehearing is overruled.