SCHELLER et al. v. GROESBECK et al.
(No. 430.)

(Court of Civil Appeals of Texas. Beaumont. June 25, 1919. Rehearing Denied Oct. 15, 1919.)

1. DEEDS ⬅➡93—LITERAL CONFLICT RESOLVED IN FAVOR OF MAIN INTENT.

Whenever possible, all parts of a deed must be given effect, and all the language of the deed must be retained and construed so as to harmonize and make effective every word and sentence, but where uncertainty or conflict arise if every word is literally accepted, the main intent of the parties, which is to be gathered from the language of the deed, allowing consideration of connected extrinsic facts to make certain what was intended by the parties, shall completely control.

2. DEEDS ⬅➡112(1) — CONSTRUCTION OF DESCRIPTION TO CARRY OUT INTENT OF GRANTOR.

Where grantor owned a league of land lying in Jasper county, and a labor of land lying in Liberty county, and the league and labor were known as the "C. league" and also as the "C. survey," and the deed recited sale of a "league of land lying and being in the county of Liberty," and also the grant to C. from the states of Coahuila and Texas, together with names of grantors and grantees of intermediate transfers, in view of the rule that deeds must be construed most strongly against the grantor and the fact that such intermediate deeds were in possession of grantee under whom plaintiff claimed, such deed must be held to pass title to such labor of land.

Appeal from District Court, Liberty County; J. Llewellyn, Judge.

Action by J. N. Groesbeck and others against L. Scheller, for the recovery of a labor of land, in which George M. Coale was impleaded and subsequently Katherine Wolf was made a defendant. Judgment for plaintiffs against the defendants L. Scheller and Katherine Wolf, for the land in controversy, and in favor of L. Scheller and Katherine Wolf against George M. Coale on his covenant of warranty. Defendants' motion for new trial was overruled, and they appeal. Judgment affirmed.

W. R. Blain, of Beaumont, for appellants.
E. B. Pickett, Jr., of Liberty, for appellees.

HIGHTOWER, C. J. This is an action in the form of trespass to try title by appellees, who are admitted to be the heirs of J. N. Groesbeck, Sr., whose father was John D. Groesbeck and whose mother was P. H. Groesbeck. John D. and P. H. Groesbeck had three children, all sons, but two of them died without issue, so that J. N. Groesbeck, Sr., became their sole heir. The suit was filed in the district court of Liberty county against L. Scheller as the original defendant for the recovery of a labor of land granted to Salvador Castillo and located in Liberty county.

The defendant in his original answer impleaded George M. Coale, his warrantor, who was duly served. The defendant in his amended answer pleaded not guilty, and also interposed the statutes of 3, 5, and 10 years' limitation. During the pendency of the suit Katherine Wolf, the divorced wife of the original defendant Scheller, was made a party defendant, and, waiving service, filed her answer, and adopted the pleadings of her codefendant L. Scheller. The case was tried before the court without a jury, and judgment rendered for the plaintiffs against the defendants L. Scheller and Katherine Wolf for the land in controversy, and in favor of L.

Scheller and Katherine Wolf against George M. Coale on his covenant of warranty in the sum of $1,150, with legal interest thereon, etc. The defendants filed a motion for new trial, which was overruled, and thereafter by proper proceedings brought the case to this court for review.

Appellants' brief contains several assignments of error, but at the very threshold of the case we are met by objections interposed by appellees to the consideration of any of these assignments because of the failure on the part of appellants to comply with the rules governing the briefing of cases in this court relative to following assignments of error by appropriate propositions of law and by full and proper statements of matters appearing in the record relative thereto. Upon consideration of the objections interposed by appellees, we find that they are not without merit, and if we should adhere strictly to the rules with reference to briefing causes in this court in the respects mentioned, we would be justified in refusing to consider any of appellants' assignments of error. This court has at all times, however, been liberal in matters of this kind, and only on rare occasions have we declined to consider an assignment of error, and in those instances the violation of the rules was so flagrant that we felt justified in disregarding such assignments. In this case, however, the sole or at least vital and controlling question for determination is whether the trial court was in error in its construction of one of the deeds constituting a link in the chain of title claimed by appellees to the labor of land in controversy, and if the trial court's construction of that deed should be upheld by this court, that conclusion alone would be decisive of all other assignments, and would necessarily result in affirmance of the judgment. We have therefore decided to consider appellants' one assignment of error which challenges the correctness of the trial court's judgment in construing said deed. The assignment is as follows:

"The court erred in holding that the deed from John H. Walton to L. M. Hitchcock, Jr., dated January 28, 1842, which described the land therein conveyed as follows: 'A league of land lying and being in the county of Liberty and in said republic, the said league of land being the same that was granted to Salvador Castillo by the states of Coahuila and Texas, the title of possession executed by Chas. S. Taylor, commissioner, and by said Castillo conveyed to John K. Allen and by James S. Holman, as trustee for Henry R. Allen and Samuel L. Allen conveyed to Amasa Turner, and by said Turner conveyed to John H. Walton and William Turner jointly, and by William Turner quitclaimed to said Walton, which said conveyances are all of record in the county clerk's office in said Liberty county, and for boundaries and a fuller description of said land, reference is had to said conveyances'—conveyed and passed title to the labor of land granted to the said Castillo in Liberty county."

The Mexican government, on November 6, 1835, granted to Salvador Castillo a league and labor of land in one instrument, but described by separate field notes. The field notes, as given in the grant are as follows:

"The tract surveyed for Salvador Castillo is situated 1½ miles south of the road leading from the town of Liberty to the village of Beaumont, 12 miles from Liberty and 18 miles from Beaumont; beginning at the S. E. landmark of the Flores survey; thence W. 1,000 vrs. to the S. W. landmark of C. Perez where second landmark was made; thence S. 1,000 vrs. to the 3d landmark; thence E. 1,000 vrs., to the 4th landmark; thence N. 1,000 vrs., back to the beginning point; thus forming one labor of land of the class of arable lands situated on the prairie; completed afterwards the survey of one league of land for the same Salvador Castillo, which league is situated near the Neches river, 10 miles from Grant's Bluff, beginning at the S. E. landmark of Elisha Morris' tract, which landmark is also the S. W. corner of H. Webb's survey, and the first landmark was made; thence E. following said Webb's S. line 5,000 vrs., and on Flores 9, the second landmark was made from which a pine 18 in. in dia. bears S. 9 deg. W. 9⁸/₁₀ vrs., and another pine 12 in. in dia. bears N. 62 deg. W. 6 vrs., thence S. 5,000 vrs., and the 3d landmark was made, from which a red oak 6 in. in dia. bears N. 44 deg. 30′ W. 3⁹/₁₀ vrs. distant and a white oak 8 in. in dia. bears S. 20 deg. W. 3²/₁₀ vrs., thence W. 5,000 vrs. and the 4th landmark was made from which a post oak 17 in. in dia. bears S. 8 vrs. and a pine 20 in. in dia. bears N. 1 deg. 30′ E. 7²/₁₀ vrs., thence N. 4,995 vrs. to the beginning point; thus completing the survey of one league of land with 8 labors of arable land and balance in pasture lands."

The chain of title introduced in evidence by appellees on the trial below was as follows:

(1) The original grant made by the Mexican government to Salvador Castillo on November 6, 1835, describing both the labor of land here in controversy and the league granted at the same time with the description as just above shown.

(2) A deed from Salvador Castillo to John K. Allen, dated August 27, 1836, first filed for record in Liberty county June 24, 1838, and filed for record in Jasper county on November 28, 1856, and again filed in Liberty county on June 20, 1902, which deed contained the following description of the land conveyed thereby:

"One league and one labor of land lying and being situated one and a half miles to the south of the road which goes from the town of Liberty to the village of Beaumont, twelve miles from Liberty and eighteen miles from Beaumont, and on the Neches river, 10 miles from Grants Bluff; the title of possession having been executed by the commissioner, Chas. S. Taylor, on the 8th day of November, 1835, which will be seen by reference to a copy of the same which I certify to have seen and to which I give faith as having been executed by proper authority and according to law."

(3) A deed from A. C. Allen for himself and as surviving partner of the firm of A. C. & J. K. Allen, to Henry R. Allen and Samuel L. Allen, dated January 16, 1839, conveying, among other lands, the league and labor granted to Salvador Castillo, said deed containing the following description:

"Also land lying in Liberty county, one league and one labor to Salvador Castillo."

This deed having been filed for record in Harris county on January 19, 1839, and a certified copy thereof from Harris county was filed for record in Jasper county on November 25, 1856, and in Liberty county on June 20, 1902.

(4) A deed from Henry R. Allen, Samuel L. Allen, and A. C. Allen to James S. Holman, trustee, dated April 8, 1840, filed for record in Jasper county on November 25, 1856, and in Liberty county on June 20, 1902, conveying, among other lands, "all of the lands which were conveyed by A. C. Allen to Samuel L. Allen and Henry R. Allen by the deed dated January 16, 1839, above mentioned."

(5) The original deed from James S. Holman, trustee, to Amasa Turner, dated August 19, 1840, and conveying:

"One league and one labor of land lying and being situated one mile and a half south of the road, which in the year 1836, led from the town of Liberty to the village of Beaumont, 12 miles from said town of Liberty and 18 miles from said village of Beaumont, and on the river, 10 miles from Grants Bluff, for a more particular description of which said land reference is here made to the original grant of the same to Salvador Castillo now on file in the General Land Office of the Republic, dated November 6, 1835."

And this deed was first filed for record in Liberty county on August 29, 1840, and filed for record in Jasper county on November 25, 1856, and again filed in Liberty county on June 29, 1902.

(6) The original deed from Amasa Turner to John H. Walton and William Turner, dated October 28th, and conveying:

"One league and labor of land lying and being in the county of Liberty, Republic of Texas, known as the Castillo League, being the same as granted to Salvador Castillo by the commissioner, Chas. S. Taylor, as his headright, for more particular description of which reference may be had to the annexed titles, which are from the said Castillo down to myself and recorded in Liberty county."

This deed was first filed for record in Liberty county on November 2, 1841, and filed for record in Jasper county on November 25, 1856, and again filed in Liberty county on June 20, 1902.

(7) The original deed from William Turner to John H. Walton, dated January 26, 1842, and conveying:

"One undivided half of one league and labor of land lying and being in the county of Liberty, Republic of Texas, known as the Castillo Survey; being the same as granted to Salvador Castillo by the commissioner, Chas. S. Taylor, as his headright, for more particular description of which reference may be had to the annexed titles, which are from the said Castillo down to myself and recorded in Liberty county;"

—this deed having been first filed for record in Jasper county on November 25, 1856, and in Liberty county on June 20, 1902.

(8) The original deed from John H. Walton to Lent M. Hitchcock, Jr., dated January 28, 1842, and the land conveyed thereby being described as follows:

"A league of land lying and being in the county of Liberty in said republic, the said league of land being the same that was granted to Salvador Castillo by the state of Coahuila and Texas, the title of possession executed by Chas. S. Taylor, commissioner, and by said Castillo conveyed to John K. Allen and by James S. Holman, as trustee for Henry R. Allen and Samuel L. Allen, conveyed to Amasa Turner, and by said Turner conveyed to John H. Walton and William Turner jointly, and by said William Turner quitclaimed to said Walton, which said conveyances are all of record in the county clerk's office in said Liberty county, and for the boundaries and a fuller description of said land, reference is had to said conveyances."

This deed was first filed for record in Liberty county on October 25, 1842, and in Jasper county on November 25, 1856, and again in Liberty county on June 20, 1902.

(This is the deed, the introduction of which was objected to by appellants and the trial court's construction of which is challenged by them.)

(9) The original deed from Lent M. Hitchcock, Jr., to John D. Groesbeck, dated August 2, 1845, conveying:

"One league and labor of land lying and being in the county of Liberty, republic aforesaid, about 12 miles from the town of Liberty and 18 miles from the village of Beaumont, on the waters of the Neches river, being the same granted by the state of Coahuila & Texas to Salvador Castillo, the title of possession executed by Chas. S. Taylor, commissioner, and by said Castillo conveyed to John K. Allen, and by A. C. Allen for himself and as surviving partner of the firm of A. C. and J. K. Allen, to Henry R. Allen and Samuel L. Allen and by Henry R. and Samuel L. Allen conveyed to James S. Holman in trust, and by said trustee to Amasa Turner, by said Turner to John H. Walton and William Turner, by said William Turner to John H. Walton, and by said John H. Walton to Lent M. Hitchcock, Jr., which said conveyances are of record in the clerk's office in said county of Liberty, for the boundaries and a fuller description of said land, reference is had to said conveyances."

This deed was first filed for record in Jasper county on November 25, 1856, and first filed for record in Liberty county on January

8, 1877, and again filed in Liberty county on June 20, 1902.

Appellees proved by the testimony of J. N. Groesbeck, Jr., that P. H. Groesbeck was the wife of John D. Groesbeck, who was the grantee in the above-mentioned deed from Lent M. Hitchcock, Jr., and that the five original deeds above mentioned, to wit, the deed from James S. Holman to Amasa Turner, from said Turner to John H. Walton and William Turner, from William Turner to John H. Walton, and from John H. Walton to Lent M. Hitchcock, Jr., and from said Hitchcock to John D. Groesbeck, were handed to him by his father, J. N. Groesbeck, Sr., and that his grandmother, Mrs. P. H. Groesbeck, who died in 1904, had in her possession all of said deeds prior to the time his father obtained them, and also that she had the certified copies of the other deeds in the chain of title as above mentioned, and all said instruments his grandmother had kept in the same file. And, further, that after the death of Mrs. P. H. Groesbeck, her said son, J. N. Groesbeck, Sr., obtained said papers from a tin box, where she had kept them all together with other title papers to many other lands in different parts of the state. This witness further testified that his said grandmother, and his father as well, always claimed the labor of land in controversy in this suit and paid taxes thereon.

Appellees also proved that the labor of land here in controversy was assessed for taxes in the name of Mrs. P. H. Groesbeck for the years 1877, 1878, 1880, 1881, 1886 to 1898, both inclusive, and for 1901 and 1902. For some of said years the assessments were made by Henry Groesbeck, or H. S. Groesbeck as agent for Mrs. P. H. Groesbeck.

Mrs. P. H. Groesbeck had a son who was named Henry S. Groesbeck, and who died in 1899. Her husband, John D. Groesbeck, died some time prior to her death. Certificates from the comptroller's office, which were offered and introduced in evidence, did not contain the name of any other person than Mrs. P. H. Groesbeck as assessing any part of said Castillo labor for taxes or as paying taxes upon any part thereof. A map or sketch was also introduced in evidence, showing the location of the Castillo league in Jasper county, Tex. It was proved and admitted that the Neches river lies just east of the city of Beaumont.

H. O. Compton, a witness in the trial court, testified, substantially, that he is county surveyor of Liberty county, and had been about 12 years prior to the trial; that he knew where the Castillo labor is located in Liberty county, and that said labor is about 18 miles east of the town of Liberty and south of the Texas & New Orleans Railroad, and about 26 miles west of Beaumont; that there are traces in that vicinity of the old Beaumont & Liberty Road, and the Castillo labor is south of that old road, and that this old road is about three-fourths of a mile north of the north line of said labor. He further testified that there is no Salvador Castillo league of land in Liberty county, and also that there is no tract or survey of land by that name in Liberty county, unless it be the Salvador Castillo labor.

Appellants' fourth assignment of error, challenging the construction placed by the trial court on the deed from Walton to Hitchcock, above mentioned, and now under consideration, is submitted in their brief as a proposition within itself. We doubt whether it could correctly be held to be such; but, waiving that point in appellants' favor, their contention is met by appellees' first counter proposition, as follows:

"The deed from John H. Walton to Lent M. Hitchcock, Jr., of date January 8, 1842, did in fact include and convey to said Hitchcock the Salvador Castillo labor, that is, the 177-acre tract of land sued for and decreed to appellees herein, and the intent of the parties to that deed to thereby include and convey such labor satisfactorily and sufficiently appears from the language of the deed itself, especially when looked at from the situation and surroundings of the parties themselves at that time."

[1] Appellees' second counter proposition to appellants' fourth assignment and proposition is as follows:

"Whenever possible, all parts of a deed must be given effect; hence, if it can be done, all the language of the deed must be retained and construed so as to harmonize each part of it and make effective every word and sentence in it, but where uncertainty or conflict arises if every word is literally accepted, then the main intent of the parties shall completely control, such intent to be gathered from the language of the deed, allowing consideration of connected extrinsic facts to make certain what was intended by the parties to the deed."

This second proposition announces, we think, unquestionably, a correct proposition of law. As to whether appellees' first counter proposition is correct, the same must be tested by and depends upon the facts in this particular case.

[2] It was the theory of appellants upon the trial, and it is their contention here, that the deed from John H. Walton to Lent M. Hitchcock, Jr., never passed the title out of said Walton to the labor of land granted to Salvador Castillo, but that, on the contrary, the title to the labor was in John H. Walton at the date of his death, and passed to his heirs, and that said Walton's heirs, by an attorney in fact, conveyed said labor to G. M. Coale, and that Coale's deed conveyed such title to appellants.

It is admitted by appellants that if the deed from John H. Walton to Lent M. Hitchcock, Jr., passed the title to said labor to the grantee in that deed, then, of course, the judgment of the court in favor of the appel-

lees is correct, and would have to be affirmed, but, whether so admitted or not, such result would follow.

The main and vital question to be determined on this appeal we think is this: Can it be reasonably concluded from the recitations and language contained in the deed from John H. Walton to Lent M. Hitchcock, Jr., executed in 1842, that it was the intention of the parties thereto that the title to the labor of land here in controversy should pass from the said Walton to said Hitchcock? If so, then unquestionably the trial court's construction of said deed was correct, and its judgment in favor of appellees for the labor of land in controversy must be affirmed.

There is no question, of course, but that the title to both the league and labor granted to Castillo, by regular conveyances, got into John H. Walton, through and under whom both parties to this suit claim title to the labor now in controversy. In the deed from Amasa Turner to John H. Walton and William Turner, hereinbefore mentioned, conveying both the league and labor, it is expressly declared that both said tracts embraced in the single grant to Castillo are "known as the Castillo league," and further reference is there made to all preceding instruments in the chain of title to the land granted to Castillo by that single grant. Then, again, in the original deed from William Turner to John H. Walton, above mentioned, conveying Turner's undivided half interest in both the league and labor, it was expressly declared that both tracts, that is, the league and labor, were "known as the Castillo survey." It will be observed that the deed from Amasa Turner to John H. Walton and William Turner, conveying to them jointly both the league and labor granted to Castillo, but expressly declaring that both such tracts were "known as the Castillo league," was executed October 28, 1841, ind that the deed from William Turner to John H. Walton, which expressly declares that both the league and labor were "known as the Castillo survey," was executed January 26, 1842. Then just two days later (January 28, 1842), John H. Walton executed the deed to Lent M. Hitchcock, Jr., the proper construction of which really furnishes the subject-matter of this suit. The description of the land granted to Hitchcock by Walton we repeat as follows:

"A league of land lying and being in the county of Liberty in said republic, the said league of land being the same that was granted to Salvador Castillo by the state of Coahuila and Texas, the title of possession executed by Chas. S. Taylor, commissioner, and by said Castillo conveyed to John K. Allen and by James S. Holman as trustee for Henry R. Allen and Samuel L. Allen, conveyed to Amasa Turner, and by said Turner conveyed to John H. Walton and William Turner jointly, and by said William Turner quitclaimed to said Walton, which said conveyances are all of record in the county clerk's office in said Liberty county, and for the boundaries and a fuller description of said land, reference is had to said conveyances."

Unquestionably John H. Walton and Lent M. Hitchcock, Jr., both knew, at the date of this deed, that the league of land and the labor of land granted by the Mexican government to Castillo in 1835 by one instrument were commonly known and referred to as the Castillo "league" and the Castillo "survey," because it is expressly declared, in at least two deeds constituting links in the chain of title with which said parties were then dealing, that such were the facts.

It will be noted that in this deed from John H. Walton to Hitchcock the deed from Amasa Turner to John H. Walton and William Turner, and also the deed from William Turner to John H. Walton, are expressly referred to for a fuller description of the land conveyed by this deed, and these two deeds so expressly referred to declare, the one that both the league and labor were known as the Castillo "league," and the other that both the league and labor were known as the Castillo "survey." It is true that in all conveyances, both prior and subsequent to the deed from Walton to Hitchcock until comparatively recent years, all the parties thereto must have understood that both the league and labor granted to Castillo were situated in Liberty county, whereas the truth is, as admitted, that the league is in Jasper county. But their understanding as to the location of the league cannot, we think, have any controlling effect, and is of little probative force, if any, in determining the intentions of the parties to the deed from John H. Walton to Hitchcock. It would be remarkable, we think, to conclude that John H. Walton especially, being fixed with express knowledge that both tracts constituting the Castillo grant were commonly known as the Castillo "league" or the Castillo "survey," would, as late as two days after the title to both tracts was in him, make a deed by which he intended to convey only the Castillo league, without by some expression letting it be indicated that he did not also intend to convey the Castillo labor. But, instead of employing any apt expression indicating that he did not intend by his deed to Hitchcock to convey the labor, he expressly referred, for a fuller description of the land he was conveying to Hitchcock, to the two deeds in his chain of title that substantially declared, in express terms, that both tracts, that is, the league and labor, were commonly known at the very time as one tract; that is to say, either as the Castillo "league," or the Castillo "survey."

Appellants contend, in substance, that under any and every rule for the construction of deeds, title to the league of land granted to Castillo passed by the deed from John H.

Walton to Lent M. Hitchcock, Jr., and not the title to the labor. It is argued by appellants that it is the universal rule of construction that all deeds must be construed most strongly against the grantor, and that this rule requires that the deed from Walton to Hitchcock should be construed as conveying the league of land granted to Castillo and admitted to be in Jasper county, rather than the labor of land in Liberty county; and that it certainly cannot be contended that John H. Walton conveyed by said deed to Hitchcock both the league and labor.

We think appellants' contention that it is the universal rule of construction to be applied to deeds that they must be construed most strongly against the grantor is correct, and that citation of authority on that proposition would be superfluous; but we cannot agree with appellants that such rule requires that the deed from Walton to Hitchcock be construed as conveying only the league of land in Jasper county, and that it cannot be construed properly as conveying the labor of land in Liberty county. Nor can we agree that it is "certain that said deed did not convey both the league and labor." In support of their contention that the deed from John H. Walton to Hitchcock did not have the effect to convey from the former to the latter the title to the Castillo labor, they seem to rely largely upon the cases of West v. Houston Oil Co. of Texas, 46 Tex. Civ. App. 102, 102 S. W. 928, and Powers v. Minor, 87 Tex. 86, 26 S. W. 1071.

In Powers v. Minor, the holding of the court was, substantially, that one claiming under a deed for land patented by virtue of a headright certificate could not recover a tract of land patented to the same grantee by virtue of a bounty warrant. In that case the facts, briefly stated, were that two tracts of land were patented to one John H. Walker, both tracts situated in the northern part of Falls county, on Big creek, each tract containing 1,280 acres, and the tracts adjoined each other, one by virtue of headright certificate, and the other by virtue of a bounty warrant to Walker. The plaintiffs, suing for a portion of the land patented by virtue of the bounty warrant, claimed it under a deed which described the land conveyed by such deed as follows:

"The undivided half of 1,280 acres of land situated in the southeast part of Falls county, on the waters of Big creek, being the headright of John H. Walker, and reference being hereby made to the patent of said Walker for the boundaries and a more particular description of said tract of land."

The court held that no part of the bounty warrant survey was conveyed by such deed. It was there said, among other things:

"The descriptive language in the deed was in all its parts applicable to the headright survey. There was no conflict in any part of its terms, and none could arise in applying that description to that tract. The difference between 'headright' and 'bounty' surveys is well understood in this state, and the language, 'the headright of John H. Walker,' was a definite and distinct designation of a survey made for Walker by virtue of his headright certificate. There was a headright grant patented to John H. Walker of 1,280 acres, at the place designated, and while there may have been a mistake, there is no uncertainty. The grant of a headright would not convey a bounty survey, and the court rightly instructed the jury that plaintiff acquired no title to the land in controversy under that deed."

In West v. Houston Oil Co. of Texas, the facts showed, substantially, that the land there in controversy was granted to one Jesse McGee by the Mexican government, and that it was situated partly in Sabine and partly in Newton counties. The appellants, who were the plaintiffs there, brought the suit in the form of trespass to try title, claiming under a deed from Jesse McGee to William Dobson, dated January 14, 1840. The defendants claimed under subsequent deeds from McGee, and one of their defenses was that they purchased the land for value without notice. The deed from McGee to Dobson described the land as follows:

"All that tract, lot or parcel of land containing 4,428 acres and being the league of land granted to me, the said McGee, by George Antonio Nixon, commissioner of Empresario Lorenza De Zavala, which said land is situated in Jefferson county on Cabiceras bayou and joining the land of Frances Valeres on the east, and for further description of said land reference is hereby made to the original plat and field, notes of the survey which are on file and of record in the General Land Office of this Republic, and reference may also be had to title papers which are herewith handed to the purchaser."

It was further shown that Dobson sold the land conveyed to him by McGee to David Lawrence, and then it passed by regular conveyances to Samuel West, who was the ancestor of plaintiffs in that suit. Each deed described the land as the land purchased by Dobson from McGee on January 14, 1840, and that deed was expressly referred to in all of them. Also in that case each deed described the land as situated in Jefferson county, but all of the deeds were filed for record in Newton and Sabine counties, where, in fact, the land was located. and in that case it did not appear, either, that McGee was ever granted any land in Jefferson county. The Court of Civil Appeals for the First District, writing the opinion in that case, held that the insertion in the description of the statements that the land was in Jefferson county on Cabiceras bayou and adjoining the land of Frances Valeres on the east, which statements were shown to be false, did not vitiate the description or in-

validate the deed. It was said, among other things:

"There is no ambiguity upon the face of the instrument, and the inconsistency in the descriptions arises when we attempt to apply them to the subject-matter of the sale. When it is shown by extrinsic evidence what was the subject-matter of the contract, and the land actually sold and purchased and intended to be conveyed is thus identified, the false portion of the description in the deed should be rejected as surplusage, and the instrument construed in conformity with the true intention of the parties."

After a careful consideration of these cases cited by appellants, we do not construe them as supporting their contentions. On the contrary, we are inclined to think that what the court really held in the last case mentioned tends to support the construction placed by the trial court in this case on the deed from Walton to Hitchcock.

If appellants be correct in their contention that it cannot be gathered from the language of the deed from Walton to Hitchcock with reasonable certainty that it was the intention of the parties to convey the title to the labor of land here in controversy, then we say that at least it must be admitted that any uncertainty, if any, as to the intention of the parties to that deed, as to what was conveyed by it, was created by Walton, the maker of the deed and grantor of the land, and his deed, therefore, should be construed most strongly against him; and, if susceptible of the construction that it was the intention of the parties to it that title to both the league and labor was to pass to Hitchcock, that construction should be applied, and the deed construed as passing title to both the league and labor. This would be but to apply the rule for the construction of deeds generally announced that the construction most unfavorable to the grantor will be adopted when the intention is left doubtful. Crawford v. Spruill, 187 S. W. 361; Arden v. Boone, 187 S. W. 997.

If we are permitted to also consider the acts and conduct of the parties to the deed from Walton to Hitchcock in 1842, as showing the construction placed by them upon that deed, there could hardly arise a reasonable contention that it was not the intention of John H. Walton, at that time, to convey to Hitchcock the labor of land in controversy in this case. It appears from the record that, as far back as any living witness could remember, all the title papers relating to the land have been continuously in the possession of John D. Groesbeck and those claiming under and through him, and it is but reasonable to presume that he came into possession of those title papers at or about the date of the deed from Hitchcock to himself, which deed purported to convey both the league and labor granted by Castillo by the one instrument in 1835; also the record discloses, without dispute, that as far back as any tax record discloses no one except the Groesbecks have ever assessed or paid taxes on the labor here in controversy, nor asserted claim of ownership in any other manner thereto; but, on the contrary, the proof shows that Mrs. P. H. Groesbeck, the widow of John D. Groesbeck, and their son, J. N. Groesbeck, Sr., always claimed this labor of land. Although, as shown by the record, the deed from John H. Walton to Hitchcock was made way back in 1842, there is not a particle of evidence that Walton or his heirs or any one else claiming through or under Walton or his heirs, at any time thereafter made any character of assertion of ownership to the land here in controversy until in 1902, when Walton's heirs executed a power of attorney to Joseph Franklin relative to this labor, and thereafter, in October, 1903, Franklin, under the power, conveyed the same to said G. M. Coale.

Upon the whole case, and without pursuing the matter further in detail, we have concluded that the trial court properly held that the deed from John H. Walton to Lent M. Hitchcock, Jr., was intended to pass, and did pass, to the latter title to the labor of land here in controversy, and the assignment by appellants, attacking the trial court's construction of that deed, cannot be sustained.

It is unnecessary for us to determine whether said deed had the effect to also convey the league of land in Jasper county, as that precise issue is not presented, and we do not decide it. If its determination in this case should be necessary, the writer would be inclined to the view that said deed from Walton to Hitchcock was intended to and did pass title to both the league and labor included in the single Castillo grant.

It follows from what we have said in construing the deed from Walton to Hitchcock that appellants have failed to sustain their plea of innocent purchaser, and there is no necessity for further discussing that point, even if appellants' assignments were in a shape to be considered on that point.

The judgment of the trial court should be affirmed; and it will be so ordered.