GARLAND MOORE v. WESLEY E. GARRISON, INC.,
a Florida Corporation

5 So. (2nd) 259
Division B
Opinion Filed November 28, 1941
Rehearing Denied January 8, 1942

*Gramling & Gramling,* for Appellant;

*Albert Bernstein* and *Nicholas Hodson,* for Appellee.

CHAPMAN, J.—On appeal we have for review an order dismissing an amended bill of complaint on final hearing entered by the Circuit Court of Dade County, Florida. The case comes here for the second time. See Moore v. Wesley Garrison, Inc., 133 Fla. 237, 183 So. 332. On the previous appeal the question presented was whether or not the allegations of the bill of complaint contained equity as against a motion to dismiss for want of equity. The bill of complaint, we held, contained equity and reversed the order of dismissal entered by the lower court and directed further proceedings in the lower court.

The bill of complaint was amended on the going down of the mandate and a second motion to dismiss the amended bill of complaint on the ground of a want of equity was presented, but the same was by the lower court overruled and denied. The defendant below, appellee here, filed an answer to the amended bill of complaint and the case was referred to a Special Master with directions to take testimony. The parties appeared before the Special Master and testimony was adduced and promptly reported to the chancellor, with recommendations as to a decree. The plaintiff below

filed exceptions to the Special Master's report and the same was duly considered on final hearing, when the court entered an order denying the exceptions so made and entered an order dismissing the bill of complaint, and an appeal therefrom has been perfected, briefs filed and oral argument heard at the bar of this Court by counsel in which the propriety of the order of dismissal is both criticised and defended.

The prayer of the amended bill sought the cancellation of a certain tax deed to property owned by Garland Moore, and obtained by the defendant below, the appellee here. The plaintiff tendered into court such money as had been paid out by the defendant in obtaining the tax deed, plus interest, and contended that the description of the land on the assesment rolls of Dade County, and the description thereof appearing in the application for, as well as in, the tax deed was not only void but without force *ab initio,* because of the uncertainty as to the property attempted to be described. It was the contention of the owner of the tax deed that while the property was erroneously described, the description was not fatally defective because a competent and experienced surveyor testified that he could take the description and locate the property described in the tax deed. The land involved was unimproved property or lots situated in a subdivision at one time within the limits of the City of Miami, but the city limits were subsequently contracted and the property in litigation is now located without the limits of said city. The appellant, in the Spring of 1933, bought the land involved, together with other lands subject to several years of unpaid taxes. The appellant's agent, with the assistance of deputy clerk, checked the records to learn the amount

due for unpaid taxes and negotiated a settlement thereof with the authorities. He had received notice of application for tax deed on some of the property and redeemed the same by payment, but did not receive notice of an application on the part of the appellee for a tax deed, for, in fact, the notice of the application was by the clerk sent to LaFlorida Investment Company, Jacksonville, and the same was not delivered, but was returned to the clerk and by a deputy placed among the files. Likewise, it is contended that the description of the land as advertised is legally insufficient as a muniment of title and if sustained the result would be the taking of property without due process of law. Lots 26 and 27, Portion of Miami Shores Unit A in Block 362, are located in Section 33, Tp. 52, South, Range 42 East.

The assessment roll for the year 1928 discloses that the land here involved was described by the tax assessor of Dade County as Lots 26 and 27 of Block 362, City of Miami Shores, Portion of Unit A, Section 28, Tp. 52, South, Range 42 East. The delinquent tax list published in July, 1929, by the tax collector described the land as Lots 26 and 27 of Block 362, Miami Shores, Portion of Unit A, Plat Book 17, page 47, in Section 28, Tp. 52, South, Range 42, East. Tax Certificate No. 8107 sold by the tax collector of Dade County, August 5, 1929, for the unpaid taxes for 1928, described the land as Lots 26 and 27, Block 362, Portion of Miami Shores Unit A, Plat Book 17, page 47, in the County of Dade, State of Florida. The notice of application for a tax deed as published in the Miami Post described the land viz: Lots 26 and 27, Block 362, Portion of Miami Shores Unit A, Plat Book 17, page 47, in the County of Dade, State of Florida. The

description of the land appearing in the tax deed as issued on July 18, 1934, followed the description as published in the notice of application for deed.

The error or confusion on which this suit originated grows out of a map or plat of acreage or unimproved lands situated in Sections 28, 29 and 32 and 33 of Township 53, South, Range 42 East. The map was prepared in 1925 and contains five pages. The first thereof is a key to the map or plat which subdivides the unimproved lands into lots, blocks, streets, avenues, parks and drives. The property when platted was within the city limits, but was excluded therefrom in 1933. The appellant bought the property, subject to city and state unpaid tax certificates, being roughly estimated at the sum of $35,000.00. The plaintiff redeemed the certificates against the property and examined the record for unpaid tax certificates on the lots involved. The description placed the lots involved in Section 28. The clerk examined the record and concluded that the plaintiff did not own land in Section 28 but that his land was located in Section 33. The plaintiff redeemed by payment city and state certificates against his property, and, being advised that the appellee here claimed title to the two lots situated in Section 33 under a tax deed, the plaintiff contacted defendant and requested the privilege to redeem, but his request was refused, when plaintiff filed suit to cancel the tax deed, and simultaneously paid into the registry of the court the money paid for the tax deed by the defendant below.

Careful study and consideration have been given to the plat containing the streets, boulevards, parks, blocks and lots therein described and situated in Sections 28 and 33. Lots 26 and 27 of Block 362 are

therein described as located in Section 28 and the tax collector so assessed them for the year 1928; the tax collector, in August, 1929, so described them in his delinquent tax sale; the deputy clerk searched the record and concluded they were not situated in Section 33, but owned by the LaFlorida Investment Company of Jacksonville, and pursuant thereto sent copy of notice of application for tax deed to LaFlorida Investment Company, at Jacksonville. The plaintiff's agent and attorney examined the record and concluded these lots were not owned by their principal. It is for these reasons that counsel contend that the description as to the two lots was uncertain, ambiguous and misleading.

Counsel for appellee contend that if the map or plat is considered in its entirety, the key will unfold and explain the map, and when so considered, accuracy and precision appear in the description of the two lots involved; and that it is possible for a surveyor, or an abstractor, or others experienced in the handling of legal descriptions, to identify and locate the lands with the aforesaid description. It is admitted that the clerk mailed to the LaFlorida Investment Company, at Jacksonville, a notice of application for a tax deed as required by the statute, but the record discloses that when the notice was mailed to the LaFlorida Investment Company, there was a deed on record in the clerk's office showing the title to the property was in the plaintiff below, the appellant here.

Counsel for appellee further contend that if the description of the land is fatally defective or at variance with the description appearing in the assessor's roll and in the notice of the sale of the delinquent taxes as made by the tax collector, then testimony *aliunde*

was admissible to show or establish that the property could or may be identified and located by the description appearing in the tax deed. And on this theory an experienced and competent engineer previously rendering some service to the defendant testified that he could with the description locate the property, and on this point no testimony is in the records to the contrary, and that therefore the case should by the court be decided for the defendant. Several Florida decisions are cited to sustain counsel's conclusion. See Ranger Realty Co. v. Hefty, 112 Fla. 654, 152 So. 439.

Counsel for appellant, in reply to this contention, states that testimony *aliunde* can or may be adduced where the tax certificate is relied upon as evidence of a lien, but the rule is inapplicable to descriptions of land in tax deeds where the deed is relied upon as a muniment of title. The case of Newson v. Belle Mead Development Co., 131 Fla. 143, 179 So. 160, is cited.

Independent of the questions posed for a decision and the legal sufficiency of the description of the land appearing in the tax deed here attacked and defended, pertinent and material facts are disclosed by the record, the weight of which can not easily be thrust aside in a court of equity. They are viz.: (1) the land here involved is not situated in Section 28, but in Section 33; (2) LaFlorida Investment Company owned most of the land in Section 28 and plaintiff's land is located in Section 33; (3) the land here involved appeared on the assessor's tax roll for the year 1928 in Section 28; (4) the two lots were advertised and sold by the Tax Collector in August, 1929, and the same were described as located in Section 28; (5) the plat book appearing in the clerk's office placed the two lots in Section 28; (6) the plaintiff relied upon this

record to pay outstanding tax certificates; (7) plaintiff adjusted all outstanding tax certificates against his land; (8) the notice of application for tax deed did not follow the description of the tax roll; (9) the notice of the application was by the clerk sent to LaFlorida Investment Company, Jacksonville, and not to the owner of record; (10) the deed of plaintiff was duly recorded in the clerk's office when the notice was mailed; (11) the deputy clerk was of the view that the two lots were owned by LaFlorida Investment Company or he would not have mailed it a copy of the notice of application for tax deed; (12) the deputy clerk was misled by the erroneous description appearing in the clerk's office; (13) Mr. Krames, an experienced realtor of twenty-five years at Miami, searched the record and was misled by the description of the land appearing in the plat book; (14) an attorney checked the record and concluded that the two lots were not located in Section 33; (15) plaintiff, through his agent, offered to return all money paid for the tax deed for a deed therefor; (16) simultaneously with filing of the suit for cancellation he paid into the registry of the court the full amount paid by the defendant for the tax deed, with lawful interest; (17) the tax deed was issued on July 18, 1934, and the suit at bar was filed about a year thereafter.

From the circumstances recited, it is difficult to conceive of greater diligence or care on the part of an owner of property in the redemption of unpaid tax certificates. The certificates, as the basis of the tax deed involved here, would have been paid had the deputy clerk not erred in finding or locating the same, and this conclusion is unassailable because the deputy clerk concluded the land was located in Section 28 and

accordingly sent notice of application to the owner thereof in conformity with the statutes. The mistakes or errors in this connection of the deputy clerk should not be underwritten by the plaintiff and he thereby deprived of his property, when an honest and bona fide effort by plaintiff was made to redeem.

In the case of Hurst v. National Board & Investment Co., 96 Fla. 148, 117 So. 792, 59 A. L. R. 807, this Court held that equity would grant relief because of mistake. See annotation 59 A. L. R. pages 809 to 824. See also Langly v. Irons Land & Development Co., 94 Fla. 1010, 114 So. 769. Where there is a material mistake by one or both parties to a deed as to identity, situation, boundaries, title, and amount or value of land conveyed, equity will grant relief. See 9 Am. Jur. pages 380-1, par. 35.

Pomeroy's Equity Jurisprudence, Vol. 2 (4th ed.), pages 1741-2, par. 852, states the rule thusly:

"852. SECOND. MISTAKES OF FACTS.—The general doctrine is firmly settled as one of the elementary principles of the equitable jurisdiction, that a court of equity will grant its affirmative or defensive relief, as may be required by the circumstances, from the consequences of any mistake of fact which is a material element of the transaction, and which is not the result of the mistaken party's own violation of some legal duty, provided that no adequate remedy can be had at law. It has been said, 'No person can be presumed to be acquainted with all matters of fact connected with a transaction in which he engages.' This general doctrine is applied in a great variety of forms and under a great variety of circumstances. It presents but few *theoretical* difficulties; its practical difficulties arise from its application to particular in-

stancès of relief, and this application must be largely controlled by the circumstances of each case."

Likewise 12 C.J.S., page 980, in dealing with the same subject, says:

"To authorize a cancellation for mistake, the mistake must be palpable and must materially affect the substance of the thing contracted for. Another limitation placed by a number of decisions on the general rule which authorizes a court of equity to cancel an instrument on the ground of either mutual or unilateral mistake is that the mistake should not result solely from the want of such care and diligence as are exercised by persons of reasonable prudence under the same circumstances."

See Glenn v. City of Birmingham, 223 Ala. 501, 137 So. 292; 4 R.C.L., pages 506-7, par. 20; 9 C. J. par. 56, pages 1189-90.

For a decision of the case at bar it is not necessary to determine the legal sufficiency or insufficiency of the description of the land involved. The plaintiff, as sustained by the record, exercised due diligence and care in redeeming the unpaid certificates against the property. The certificates on which the challenged tax deed issued would have been paid had it not been for the error or mistake of the deputy clerk upon examination of the plat, concluding that the property was located in Section 28 and was the property of the LaFlorida Investment Company. The decision here is restricted to the facts of this case. It was error on the part of the chancellor below to dismiss on final hearing the bill of complaint.

The order of dismissal appealed from is hereby reversed, with directions to the chancellor below to enter a decree cancelling of record the tax deed and ordering

the payment to the defendant below of the money described in the bill of complaint now in the registry of the clerk of the Circuit Court of Dade County.

It is so ordered.

BROWN, C. J., TERRELL and THOMAS, J. J., concurring.