In re Harold L. HALL d/b/a/ Toggery Mens Clothiers, Debtor.

Bankruptcy No. 80–01292–BKC–TCB.

United States Bankruptcy Court, S. D. Florida.

Sept. 23, 1981.

Margaret L. Cooper, West Palm Beach, Fla., for debtor.

Daniel L. Bakst, West Palm Beach, Fla., for Trustee.

### ORDER ON CLAIM NO. 12

THOMAS C. BRITTON, Bankruptcy Judge.

The Bank of South Palm Beaches claims $19,472 secured by a lien against all the debtor's tangible assets and its receivables. (Claim No. 12). The trustee objects to the bank's claim of secured status and seeks under 11 U.S.C. § 547(b) to avoid the bank's asserted lien. (C.P. No. 21). The bank has waived the trustee's use of a motion rather than an adversary complaint to determine the validity of the bank's lien. B.R. 701(2).

The issues require careful attention to a complex statutory pattern, but the facts are simple and undisputed. The debtor gave the bank two notes, dated October 4, 1979 and April 25, 1980 for loans of $20,000 and $5,000 respectively. The notes were secured and the security agreements were promptly perfected. On May 23, 1980, these two loans were consolidated and extended by a new note and security agreement. At the same time, the bank released its earlier security agreements. A U.C.C.–3 form effecting that release was filed promptly. However, it was not until August 21, 1980, 90 days after the U.C.C.–1 form was executed, that the bank perfected its substituted security agreement by filing the U.C.C.–1. The delay resulted from a clerical error on the bank's part. The debtor filed for bankruptcy 46 days later, October 6, 1980.

Subsection 547(b) provides that:

" . . . the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made (A) on or within 90 days before the date of the filing of the petition; . . . and

(5) that enables such creditor to receive more than such creditor would receive if (A) the case were a case under chapter 7 of this title (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided by the provisions of this title."

The term "transfer" includes the grant of a security interest. § 1.01(40).

For the purposes of this section, a transfer does not occur until it is perfected. § 547(e)(2)(B). Therefore, the bank received its security interest 46 days before bankruptcy and at least 90 days after the debtor became indebted to the bank.

It is presumed that the debtor is insolvent for 90 days before bankruptcy, § 547(f), and that presumption has not been rebutted here.

The bank's asserted security interest would assure it of full payment. As an unsecured creditor, it could not receive full payment by liquidation of this debtor. 4 *Collier on Bankruptcy*, (15th ed.) ¶ 547.35.

█ It is clear, therefore, that the trustee has proved each of the five elements of a voidable preferential transfer.

It is the bank's argument that we should disregard the 90 day gap between the perfected cancellation of its original security and the perfection of its replacement security because it received only that which it gave up 90 days earlier. Without the 90 day gap there is no proof of the second or fifth elements of the preference. The trouble with the bank's argument is that it either gives no effect whatsoever to § 547(e)(2)(B), or it distorts one of the plain requirements of § 547(c).

Section 547(e)(2)(B), in harmony with the pattern of Article 9 of the U.C.C., provides that a transfer does not occur until it is perfected. The purpose is to protect other creditors who may rely on the public record by punishing the negligent creditor who fails to record his security interest within ten days. This court, of course, has no discretion to defeat that legislative purpose.

188

Section 547(c) preserves an otherwise avoidable transfer if (A) the transfer was intended by the parties to be contemporaneous—which was the case here—and (B) if the transfer was:

> "in fact a substantially contemporaneous exchange." [1]

The parties and I have found but one reported case which has given effect to this provision. *In re Kelley*, 3 B.R. 651, 2 C.B. C.2d 15, 21 (Bkrtcy.E.D.Tenn.1980) holds that the perfection of a security interest 60 days after the transaction was not "substantially contemporaneous". I agree. Clearly the phrase relates to an interval greater than ten days. § 547(e)(2)(B) and (c)(3)(B). By analogy with the provisions of § 547(c)(2)(B), I would have difficulty with any interval over 45 days. In this case, the 90 days interval is obviously not "substantially contemporaneous".

I have not overlooked the fact that equity often rides to the rescue of parties trapped by legal requirements. The bank's argument invites us to disregard the release of its original security. Ignoring for the moment the bank's failure to counterclaim for cancellation or rescission of its release, no purpose would be served by permitting the bank to amend its pleadings to present this issue. The circumstances here would not warrant such relief. Equity aids only the diligent and turns a deaf ear to the victim of his own carelessness. *Moore v. Wesley E. Garrison, Inc.* 1942, 148 Fla. 653, 5 So.2d 259, 262; 79 *Fla.Jur.2d*, Cancellation, Reformation, and Rescission of Instruments, § 24.

It follows that the trustee's objection to Claim No. 12 is sustained and the bank's lien is voided. The bank's claim of $19,472 is a general, unsecured claim.

---

1. This subsection also requires an exchange "for new value". The debtor received new value through extension of the time for repayment but § 547(a)(2) provides that new values "does not include an obligation substituted for an existing obligation."