In re PACIFIC TRENCHER &
EQUIPMENT, INC., Debtor.

KOEHRING COMPANY and Koehring
Finance Corporation,
Plaintiff/Appellants,

v.

N. NOLDEN, Trustee in Bankruptcy,
Credit America Corporation and Credit
Alliance Corporation, Defendants/Appellees.

BAP Nos. NC 82–1096 KEV, NC
82–1194 KEV.
Bankruptcy No. WN 4–81–01446.
Adv. No. 41–81–1037 AH.

United States Bankruptcy Appellate Panels
of the Ninth Circuit.

Argued Sept. 17, 1982.

Decided Feb. 18, 1983.

Peter J. Busch (argued), James L. Lopes,
Howard, Rice, Nemerovski, Canady & Pollak, Maureen McQuaid, Phelan, Stuppi &
Sorensen, San Francisco, Cal., for defendants-appellees.

John B. Marchant (argued), Sedgwick,
Detert, Moran & Arnold, Dennis Montali,
Pillsbury, Madison & Sutro, San Francisco,
Cal., for plaintiffs-appellants.

Before KATZ, ELLIOTT and VOLINN,
Bankruptcy Judges.

## OPINION

ELLIOTT, Bankruptcy Judge.

This appeal is from two orders for summary judgment entered against appellants'
complaint to reform a clerical error in certain U.C.C.–2 statements filed by appellants
in September of 1980.

The facts are not in dispute. Prior to
1980 both Credit America Corporation and
Credit Alliance Corporation ("Credit America") and Koehring Company and Koehring
Finance Company ("Koehring") held perfected security interests in the assets of the
debtor. For the purpose of this appeal,
Credit America concedes that, but for the
erroneous termination of Koehring's security interests, Koehring's security interest
has priority over the security interests of
Credit America.

In September of 1980, Koehring agreed to release its security interest in certain of the debtor's assets to facilitate a sale of those assets by the debtor. U.C.C.–2 statements were prepared by the buyer to effect the release of Koehring's security interest and were signed by Koehring and filed with the Secretary of State. However, on these U.C.C. filings, the box entitled "Termination" was marked in error rather than the box "Release" as was intended by the parties.

In December of 1980 Koehring discovered that its financing statements evidencing a security interest in the debtor's assets were no longer of record. The Secretary of State refused Koehring's request to correct the record to reflect a release rather than termination. Thereupon, Koehring filed a new financing statement to perfect its security interest in the debtor's assets.

On April 27, 1981, the debtor filed its Chapter 7 case. Koehring filed an adversary proceeding for declaratory relief seeking reformation of the September 1980 U.C.C.–2 statements on the grounds of mistake, inadvertence and excusable neglect.

On March 15, 1982, the trial court entered two orders. The first order granted summary judgment to defendants/appellees Credit America on the basis that there were no disputed facts and that as a matter of law Koehring was not entitled to the relief sought in the complaint. Although no findings of fact and conclusions of law were entered, it appears from the transcript record that the trial court's decision was based on the belief that reformation for clerical error in U.C.C. filings was improper.

The second order granted partial summary judgment in favor of the trustee of Pacific Trencher & Equipment, Inc. debtor. The order held that:

"the filing of the three UCC–2 Statements referring to financing statements Numbers 77129600, 77168565, and 80041389, with the California Secretary of State in September 1980 immediately terminated any perfection under the provisions of Division 9 of the California Commercial Code of any security interest of plaintiffs in any assets of PACIFIC TRENCHER & EQUIPMENT, INC., and thereafter plaintiffs had no California Commercial Code Division 9 perfected security interest in any assets of PACIFIC TRENCHER & EQUIPMENT, INC., through December 16, 1980."

It should be noted that Koehring and the trustee have stipulated that the trustee has reserved her rights to prosecute claims against Koehring, including but not limited to, attacking Koehring's security interest, perfected in December, as an insider preference.

We AFFIRM.

We hold, pursuant to clearly articulated authority of the Ninth Circuit, that Koehring's prior U.C.C. filings lost even marginal sufficiency upon the filing of a termination statement, albeit erroneous, and that in turn effected a lapse in perfection without regard to other parties' knowledge of the security interest. Moreover, we hold that the equitable doctrines of mistake and reformation are not available to alter clear language of U.C.C. filings when reformation is violative of the policies behind the U.C.C. filing system.

## I.

Section 9312(5)(a) of the California Commercial Code provides that:

Conflicting security interests rank according to priority in time of filing or perfection. Priority dates from the time a filing is first made covering the collateral or the time the security interest is first perfected, whichever is earlier, *provided that there is no period thereafter when there is neither filing nor perfection.*

*West's Annotated California Codes,* 1982 Supp. (emphasis added).

Appellant argues that the termination statements should not be given the effect of causing a lapse in perfection. Appellant cites § 9402(8) of the California Commercial Code which provides, in pertinent part, that

[a] financing statement substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading.

*West's Annotated California Codes,* 1982 Supp.

The issue presented, therefore, is whether an erroneous termination statement is "not seriously misleading." Official U.C.C. Comment 9 to § 9402 provides:

Subsection (8) is in line with the policy of this Article to simplify formal requisites and filing requirements and is designed to discourage the fanatical and impossibly refined reading of such statutory requirements in which courts have occasionally indulged themselves. As an example of the sort of reasoning which this subsection rejects, see *General Motors Acceptance Corporation v. Haley,* 329 Mass. 559, 109 N.E.2d 143 (1952).

The *G.M.A.C.* case referred to in the Comment held that when the true name of the corporate trustee was "E.R. Millen Co., Inc.", designation on filing as "E.R. Millen Company" and signature as "E.R. Millen Trustee" was insufficient to impart constructive knowledge to lien creditors. 109 N.E.2d at 146.

Section 9402(8) has been interpreted by the Ninth Circuit to require that the filing statement must be "marginally sufficient" despite the error, in order for the error to be deemed "not seriously misleading."

The test of the sufficiency of the description is whether it would indicate to an interested third party the possible existence of prior encumbrances on the collateral. *In re Munger,* 495 F.2d 511, 512 (9th Cir.1974); *Biggins v. Southwest Bank,* 490 F.2d 1304, 1307 (9th Cir.1973) . . . . While the merchandise in question is not explicitly described on document, sufficient information is set forth to enable a prospective creditor to make an intelligent inquiry; and to a person familiar with the industry the description is adequate as it is. Accordingly, the description contained in the Financial Statement complies with Section 9402.

*In re Sport Shack,* 383 F.Supp. 37, 41 (N.D. Cal.1974).

*See also, In re Thomas,* 466 F.2d 51, 52–53 (9th Cir.1972):

The statutory scheme is designed to provide a system whereby a potential creditor will be able to ascertain whether the potential debtor's property is burdened with security interests. It can hardly be said to be a "minor error" when a potential creditor of Burris Haley Thomas searches the index under "Thomas" and finds no notice of a security interest because that notice is filed under "West Coast Avionics."

Thus, in the instant case where the error resulted in the expunction of Koehring's filing statement, the error cannot be cast as "not seriously misleading," and Koehring's perfection must be regarded as having lapsed.

## II.

Appellant's reliance on the claim that no creditor was actually misled by the error is misplaced. The Ninth Circuit has repeatedly held that, "[i]t is not determinative that no actual creditor was misled." *Miller v. Sulmeyer,* 263 F.2d 513, 515 (9th Cir.1959); *In re Thomas,* 466 F.2d at 53. *See also In re Thrift Shoe,* 502 F.2d 1211, 1213 (9th Cir.1974):

The fact that there is no evidence that any creditor was actually misled is not determinative. The controlling fact is that an ideal hypothetical creditor would not have discovered NCR's lien by examining the notice index under the debtor's trade name.

*Accord, In re Lintz West Side Lumber, Inc.,* 655 F.2d 786 (7th Cir.1981) (citing *Thrift Shoe* as persuasive authority); *In re Vodco Volume Development Company, Inc.,* 567 F.2d 967 (10th Cir.1977), *cert. den.* 439 U.S. 806, 99 S.Ct. 62, 58 L.Ed.2d 98 (1978). *Vodco* notes that Colorado uniquely amended the official text of 9–403(3) to make lapses in perfection (from failure to file continuation statements in a timely manner) effective only in the case of rights acquired

during the time of the lapse. It was this amendment that allowed the court to observe:

> The harshness of the uniform text is ameliorated with respect to all *state* proceedings since the agreement between the secured party and the debtor is not rendered "void" 60 days after the stated expiration date and the interests of the creditors who were "junior" before the lapse are given priority only to the extent of new interests actually acquired during the period of the lapse. 567 F.2d at 971.

The Ninth Circuit view that "knowledge" is irrelevant with respect to the effect of a lapse under § 9312(5) also finds support from leading commentators:

> Note ... that the subsection is a "pure race" statute. That is, the one who wins the "race" to the court house to file is superior without regard to the state of his knowledge. The section nowhere requires that the victor be without knowledge of his competitor's claim. Example 3 in Comment 5 to 9–312 illustrates the irrelevance of knowledge under the subsection. One justification for such a rule is the certainty it affords. Under 9–312(5) no disappointed secured creditor can trump up facts from which a compassionate court might find knowledge on the part of the competitor. If the competitor filed first or perfected first, as the case may be, that's the end of it; he wins even if he knew of the other party's prior but unperfected claim.

J. White & R. Summers, *Uniform Commercial Code*, § 25–4 (2nd Ed. 1980).

Accordingly, Koehring's claim that Credit America's priority should not be advanced in the perfection lapse because of their knowledge of Koehring's security interest, must fail.

### III.

Appellant argues broadly that the trial court erred in not using its powers under § 1103 of the California Commercial Code to reform the erroneous termination on grounds of mistake. Indeed, § 1103 makes a panoply of equitable measures, including the doctrine of mistake, available to interpret the U.C.C. "[u]nless displaced by particular provisions of this code." *California Commercial Code* § 1103 (West's). Arguably, the provisions of § 9402(8), *supra,* are a displacement for purposes of § 1103.

The doctrine of mistake is well-recognized in California and needs no elaboration here. *See, e.g. Shaffer v. McCloskey,* 101 Cal. 576, 581, 36 P. 196 (1894) ("when the legal rights of parties have been changed by mistake, equity restores them to their former conditions when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.") On the doctrine's general application to cases under the U.C.C., see *White & Summers,* § 2–11:

> Mistake is a ... judge-made exception to the parole evidence rule, and courts are continuing to apply it post-Code. Indeed, it has already been held that the exception applies not only to mutual mistake but to unilateral mistake as well.

However, the doctrine of mistake has been construed quite narrowly with respect to security interest filings by the Ninth Circuit. *In re California Pump & Manufacturing Co., Inc.,* 588 F.2d 717, 719–20 (9th Cir.1978) (where security agreement's description of secured property was limited to property situated in South San Francisco; held description did not "reasonably identify" property of debtor actually located in other cities).

> The creditor argues that any defect in the description of the collateral can be cured by the introduction of parole evidence and reformation of the security agreement.
>
> \*   \*   \*   \*   \*   \*
>
> The approach urged by the creditor would prove detrimental not only to the goals of § 9203 but also to the fundamental goal that Article IX of the Uniform Commercial Code, adopted by California, is intended to promote. As expressed in the comment to § 9101: "The aim of this Article is to provide a simple and unified

structure within which the immense variety of present day financing transactions can go forward with less cost and with greater certainty." We would detract from commercial certainty were we to disregard the parties' written instruments and determine commercial relationships according to parole evidence. Thus we hold that parole evidence may not be admitted to reform the instant security agreement. *Id.*

We regard the reasoning in *California Pump* to be persuasive and adopt it in the instant case. *See also, In re Hall,* 14 B.R. 186, 187, 188 (Bkrtcy.S.D.Fla.1981) (where bank released security agreement through clerical error, re-perfection 46 days before bankruptcy constituted a voidable preference):

> The bank's argument invites us to disregard the release of its original security. [N]o purpose would be served by permitting the bank to amend its pleadings to present the issue. The circumstances here would not warrant such relief. Equity aids only the diligent and turns a deaf ear to the victim of his own carelessness.

The one case cited to the contrary by appellants, *In re Burkhard,* 6 U.C.C.Rep. Ser. 244 (D.S.D.Ohio 1969) is inapposite insofar as the erroneous termination statement was filed after the date of the bankruptcy: "If the termination had been prior to (the date of bankruptcy) there is a grave possibility that the trustee's lien might have been unimpeachable." *Id.* at 248. Moreover, the *Burkhard* opinion appears to be based on the theory that the trustee did not change his position because of the mistake. *Id.* To that extent, we hold that it is inconsistent with the position expressed by the Ninth Circuit in *Thrift Shoe, supra.*

■ Accordingly, we follow the rule of the Ninth Circuit and hold that the equitable doctrines of mistake and reformation are not available to alter clear language used in U.C.C. filing statements.

AFFIRMED.