MARY NEAL LANGLEY, *Appellant,* v. IRONS LAND AND DEVELOPMENT COMPANY, *Appellee.*

Division B.

Opinion Filed December 6, 1927.

*W. Ross Burton,* Attorney for Appellant;

*H. H. Eyles,* Attorney for Appellee.

BUFORD, J.—The amended bill of complaint in this case among other things contained the following allegations:

2.

"That on the 20th day of August, 1925, the defendant by and through its agent, J. L. Barowsky, represented to the complainant that it had for sale a business site in a

subdivision of Dade County, Florida, known as Irons Manor, owned by the defendant, and on said day pointed out to complainant a lot in said Irons Manor and did then and there represent to the complainant that said lot so pointed out was Lot 10 of Block 35 and offered said lot for sale.

3.

That the complainant was wholly unacquainted with the legal descriptions of the properties in said Irons Manor and with the lot so pointed out to her by the defendant and relying solely upon the representations of said defendant that the lot so pointed out to her was Lot 10 of Block 35, and being favorably impressed with the surroundings and future possibilities of said lot, did, on said August 20th, 1925, execute with the defendant a contract for the purchase and sale of Lot 10, Block 35 of said Irons Manor, at a purchase price of $8,250.00; that the complainant paid to the defendant the sum of $2,062.50, and pursuant to the terms of the said contract made her six promissory notes payable to the order of the defendant for $1,031.25 each for the balance of said purchase price; that said six promissory notes were dated the 20th day of August, 1925, bore interest at the rate of eight per centum per annum and were payable 6 months, 1 year, 18 months, 2 years, 30 months and 3 years after date respectively; that said defendant under the terms of said contract obligated itself upon the payment of the full consideration as aforesaid to convey to the complainant Lot 10 of Block 35 of Irons Manor, free and clear of all encumberances; a copy of said contract of purchase and sale is attached to the original bill of complaint, marked Exhibit ''A'' and made a part of this bill of complaint.

4.

That immediately after the execution of said contract the complainant left for her home in New Orleans, Louisiana, and did not return to Miami, Florida, until on or about the 25th day of February, 1926; that then for the first time after entering into said contract the complainant inspected Lot 10, Block 35 of said Irons Manor and discovered that Lot 10, Block 35 was not the lot which had been ·pointed out to her by the defendant and which she had agreed to purchase, but was far removed therefrom and much less valuable and desirable than the lot which she had agreed to purchase; that the lot pointed out to your complainant as aforesaid and which she intended to buy was Lot 4 of Block 25 of said Irons Manor; that on and prior to the dates aforesaid the said Lot 4 of Block 25 of Irons Manor was not and is not now the property of the defendant, but was then and is now the property of one M. Rosen, trustee, by reason of an agreement for deed dated the 25th day of July, A. D. 1925, executed by the said defendant to the said M. Rosen, trustee, as appears of record in the Public Records of Dade County, Florida, in Deed Book No. 813 at page No. 293; that thereupon the complainant demanded that she be relieved from her obligations under said contract and demanded the return of her said six promissory notes and that said sum of $2,062.50 be refunded to her, but that the defendant refused and still refuses so to do.

5.

Your complainant says further that she is informed and believes and therefore alleges that the defendant is insolvent, unable to respond in damages, and that a judgment at law for damages could not be paid nor satisfied.''

There was a demurrer filed to the bill, as follows:

"Comes now the defendant, Irons Land and Development Company, a corporation, by H. H. Eyles, its solicitor, and demurs to the complainant's amended bill of complaint, and says that the same is bad in substance and for matter of law and points to be argued, alleges:

### First.

No facts which in law constitute such misrepresentations as would entitle the complainant to the relief prayed in her bill, are alleged.

### Second.

That the complainant has a plain, complete and adequate remedy at law.

### Third.

That no facts are alleged which show the insolvency of the defendant.

### Fourth.

That no facts are alleged which show that the said J. L. Borowsky acting within the scope of his authority, had any authority to make the representations alleged in said bill.

### Fifth.

That the complainant's relief is by a bill for specific enforcement of her contract, and not for the revocation thereof.

### Sixth.

That in and by said alleged contract attached to complainant's bill as Exhibit "A" it is therein specifically agreed by and between the parties as follows: 'That

the amount of said contract is equal to and is a valid rental for the use and occupancy of said premises, possession of which is tendered by the party of the first part and accepted by party of second part, and in the event of default on the part of the party of said second part, said second party does hereby waive any right to demand and ask for the return of any moneys paid on the within agreement.' The said complainant having by said instrument accepted possession of the lot described in said contract, she is in equity estopped to deny that the lot described in said contract was not the lot she contracted to buy.

### Seventh.

That it appears affirmatively by the bill, that the defendant is a corporation, and the bill does not allege that the alleged agent of said corporation in making the alleged false representations was acting within the scope of his authority.''

The demurrer was sustained and the bill dismissed at the cost of the complainant. From this order appeal was taken.

The rule applicable to this case appears to be well stated in 9 Corpus Juris, page 1167, Section 18, as follows:

''Mistake by one party ground for rescission, not for reformation. Where a contract in writing is executed by only one of the parties, under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written and to place the parties in *statu quo;* but it does not constitute a ground for reformation, the reason being that by the mistake of one of the parties, there was no mutual assent to all the terms of the

contract—no meeting of the minds—and hence there is no prior contract to which the writing may be made to conform. As stated by an eminent text writer: 'A mistake on one side may be a ground for rescinding a contract, or for refusing to enforce its specific performance; but it can not be a ground for altering its terms.' Where such a state of facts exists, and the mistaken party is seeking reformation of the written instrument, the court, at the instance of the other party, will treat the case as though no writing has ever existed and will restore the parties to their original positions. Sometimes, however, before granting this relief the court affords the party not mistaken the option to accept an alteration in the agreement —or, more accurately, a contract in the terms understood by the other party—instead of an annulment of the writing.''

And again on page 1169 of the same volume, Section 23 is as follows:

''Innocent Misrepresentation of Fact. According to the weight of authority, misrepresentation of material facts, although innocently made, if acted on by the other party to his detriment will constitute a sufficient ground for rescission and cancellation in equity. The real inquiry is not whether the party making the representation knew it to be false, but whether the other party believed it to be true and was misled by it in making the contract; and, whether the misrepresentation is made innocently or knowingly, the effect is the same. It is as conclusive a ground of relief in equity as a willful and false assertion, for it operates as a surprise and imposition on the other party, and in such case the party must be held to his representations.''

Black on Rescission and Cancellation, Vol. 1, page 385, Section 140, says:

"Mistake as to Identity of Subject-Matter.—Equity will grant relief, by way of rescission or cancellation, from a contract or conveyance based upon a substantial misunderstanding of the parties as to the subject-matter of the contract, though the mistake was entirely innocent on both sides and there was no fraud or misrepresentation. This rule is very well illustrated by a case in Indiana, where a contract called for the delivery of 'Indiana egg coal,' and this term might properly have been used to describe either of two grades. The buyer had in mind the higher grade, and the seller the lower grade, and each party believed that he was contracting for the kind of coal which he had in mind, and it was held that no contract was made. So, in a sale of real estate, if one party believes he is buying a particular piece of property while the other thinks he is selling another piece, there is no meeting of minds so as to constitute a valid contract. Thus, for instance, if the purchaser, desiring to inspect the property before completing the bargain, has a particular lot pointed out to him, which is satisfactory and which he supposes he is to acquire, but by accident or mistake he is shown the wrong lot, that is, a lot different from that which the vendor understands he is selling and which is described in the deed, it is a case in which equity may give relief on the ground of mutual mistake."

In 4 Ruling Case Law, page 506, it is said:

"The jurisdiction of equity to decree the cancellation of an instrument because at the time of its execution the parties or even one of them labored under a mistake of fact, is well recognized; and the rule is the same whether the instrument relates to an executory agreement, or one that has been executed. Thus in case of a material mistake by one or both of the parties to a deed as to identity, situation, boundaries, title, amount of value of land con-

veyed, equity will cancel the deed, whether or not there is actual fraud; but a mere mistake as to the number of acres of land purchased where the purchaser obtains the substance of what he expected, will not justify a rescission of the contract. Although it has been held that relief by way of cancellation will be granted for a unilateral mistake of fact even though it be due to the negligence of the complainant, so long as the lack of care on the latter's part does not amount to the breach of a legal duty; the authorities are practically unanimous in holding that the mistake must not result from the want of that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances, or equity will not relieve against it. Moreover, a mistake such as will entitle one to cancellation must be material to the transaction and affect the substance thereof, rather than a mere incident or the inducement for entering into it.

In Fearon Lumber & Veneer Company v. Wilson et al., W. Va. 41, S. E. 137, the court say:

"When a deed is made in pursuance of a contract of sale of real estate, entered into under a misapprehension or in ignorance of the location of the vendor's land, and conveys to the purchaser a tract of land wholly different in location and character from the land contracted for, a court of equity will, at the suit of the vendee, rescind the contract of sale and put the parties in *statu quo,* although there was no fraudulent intent on the part of the grantor. In such case rescission results from the mutual mistake under which the parties entered into the contract."

It appears that there is equity in the bill and that the allegations thereof are sufficient to require an answer. The order sustaining the demurrer and dismissing the amended bill of complaint are, therefore, reversed, with

directions for further proceedings not inconsistent with this opinion.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

STRUM AND BROWN, J. J., concur in the opinion.

ELLIS, C. J., dissents.

STRUM, J., concurring:

When a vendor sells real estate simply by the description contained on the face of the title papers, he is not accountable for a mistake of fact resting wholly in the mind of the other party as to the location or boundaries. But if he undertakes to point out to the purchaser its location or boundaries, and represents that a stated description covers the lands so designated, he does so at his peril. If he makes a mistake, he must be accountable. When such a mistake prevents a meeting of the minds, rescission will be decreed, even though there was no fraudulent intent, unless the mistake resulted wholly from a lack of that degree of diligence on the part of the purchaser which would be exercised by a person of reasonable prudence under the same circumstances. See Strong v. Lane, 68 N. W. Rep. 765; Equitable Trust Co. v. Milligan, 65 N. E. 1044; Selby v. Matson, 114 N. W. 609, 14 L. R. A. (N. S.) 1210; Bigham v. Madison, 52 S. W. Rep. 1074; Green v. Worman, 83 Mo. App. 568.

ELLIS, C. J., dissenting:

The appellant sought relief from a written agreement to purchase from the appellee a certain lot described in the agreement in accordance with a certain plat of the

subdivision as recorded in a certain book of the Public Records of the county in which the land is located.

After executing the contract, which bound the seller to complete all paving of streets and cement sidewalks in front of all lots as shown by the plat and to expend money in appropriate landscaping and building of parks and which also provided that possession of the lot was tendered by the seller and accepted by the buyer and that the cash payment on the lot was a fair rental for the use and occupancy of the premises, the appellant left the State and did not return to Miami until February, 1926, two or three days after the due date of the first note. She alleges that she then inspected the lot for the first time and discovered that the lot she bought according to her written agreement was not the lot which had been pointed out to her by the seller. Upon that allegation she seeks a rescission of the written agreement.

I am of the opinion that the allegations of the bill are not sufficient to support the relief sought. No element of fraud or misrepresentation for the purpose of deceiving the purchaser was present in the transaction so far as the allegations go. The contract, which is attached to the bill as part of it, describes the lot as part of a subdivision according to a plat recorded in the Public Records of Dade County. The bill alleges that the lot which was ''pointed out to her'' was not the lot described in the contract. How the lot was pointed out to her is not alleged; whether it was pointed out on the plat, or whether she went actually upon the ground and examined it, is not alleged.

In any event, if there was a mistake it resulted from such gross lack of care and diligence on her part that it could not be said that she exercised the slightest diligence. She made her payment, executed the notes for the deferred payments, accepted a contract which acknowledges

that possession of the lot described was tendered by the Company and accepted by her, then, after being absent for six months, returns and says that the lot which was pointed out to her was not the one which she bought according to her agreement.

It would be inequitable to cancel the agreement entered into between the parties under the circumstances alleged in the bill. The purchaser had every opportunity for verification of the description. The ground was platted and a plat of it recorded. She accepted possession of the lot described and agreed to let the first payment go for use and occupation of the land if she failed to pay the first note due six months thereafter. She leaves the State returning six months later and examines or inspects the lot, as she alleges, for the first time. The first note had matured and was unpaid; she had defaulted and under the terms of her agreement she had waived any right to demand and ask for the return of any money paid by her on the agreement.

There is a legal duty to exercise care in all transactions. If a mistake results from the neglect of one to exercise care there can be no such mistake of fact as equity will relieve against. If equity should relieve the complainant from her contract in this case there would be no stability in contracts of like character. See Steinmeyer v. Schroeppel, 226 Ill. 9, 80 N. E. Rep. 564; Arden v. Boone, (Tex. Civ. App.), 187 S. W. Rep. 995, 6 R. C. L. p. 623, Sec. 42; Grymes v. Sanders, 93 U. S. 55, 23 L. Ed. 798.

The means of knowledge were easily accessible to the complainant and she should have exercised at least that degree of diligence which may be fairly expected from a reasonable person.