J. E. DEEN and J. B. YARBOROUGH, co-partners doing business under the firm name and style of DEEN & YARBOROUGH, *Appellants*, v. THE DESOTO NATIONAL BANK OF ARCADIA, a Banking Corporation under the Laws of the United States, *Appellee*.

Division B.

Opinion filed May 18, 1929.

*McKillop & Hamilton,* for Appellants;

*Leitner & Leitner,* for Appellee.

BUFORD, J.—The facts in this case to be gathered from the transcript are as follows: Deen & Yarborough were co-partners doing a contracting business. They procured a contract to perform certain work for the City of Winter Haven. They sublet a part of the contract to one Jelks Taylor. While Taylor was performing his contract he became or was indebted to the DeSoto National Bank of Arcadia in the sum of Twenty-five Hundred ($2500.00) Dollars for which the bank held his note. The note fell due, was not paid and the bank sued Taylor and caused writ of garnishment to be served on Deen & Yarborough. Thereafter Taylor gave the bank an order on Deen & Yarborough for Twenty-five Hundred ($2500.00) Dollars, with interest thereon from the 13th day of February, 1927, at the rate of 8% per annum, and ordered the same to be charged to his account. The bank presented the order to Deen & Yarborough for acceptance agreeing that if the order was accepted by Deen & Yarborough that the bank would dismiss the garnishment proceedings without answer therein from Deen & Yarborough. The order and acceptance thereon were in words and figures as follows:

J. E. Deen and J. B. Yarborough, co-partners doing business as Deen & Yarborough, Winter Haven, Fla.

I am due the DeSoto National Bank of Arcadia, the sum of $2500.00 and you are due me this amount. This is, therefore, to request that you pay the DeSoto National Bank the sum of $2500.00 with interest thereon from the 13th day of February, 1927 at the rate of 8% per annum and charge the same to my account with you.

JELKS TAYLOR.

We, J. E. Dean and J. B. Yarborough, co-partners doing business as Deen & Yarborough, hereby accept the above order and agree to pay the sum of $2500.00 with interest thereon at the rate of 8% per annum from February 13th, 1927 to date of payment.

DEEN & YARBOROUGH,
By J. E. DEEN, Jr.

Winter Haven, Fla., this the ——day of February, 1927.

At the maturity of the order Deen & Yarborough did not pay the same and thereupon the bank brought suit against Deen & Yarborough. Deen & Yarborough filed a plea which was in effect that Deen & Yarborough were mistaken as to the status of the account between themselves and Taylor at the time the acceptance was made. That from an investigation which they had made at that time they were lead to believe and they did believe that they owed Taylor Three Thousand ($3000.00) Dollars. It is not alleged that the bank had anything to do with such investigations. It is alleged that later Deen & Yarborough found that they did not owe Taylor anything; the plea further alleges that there was no consideration passed from the bank to Taylor for the acceptance.

After this plea was filed Deen & Yarborough filed a bill in chancery to rescind and cancel the acceptance and to enjoin the further progress of the civil action until final

adjudication of the rights of the parties in the suit for rescission. The grounds for rescission were practically the same as those alleged in the plea in the civil action.

It is contended that the complainant is entitled to rescission because of the mistake as to the amount of the indebtedness due from the complainants to Taylor at the time the acceptance was made.

There was a general demurrer to the bill of complaint which was sustained and from that order appeal was taken. The contention that the well settled law in regard to the right of rescission where a contract in writing is executed by only one of the parties under a mistake of fact, which is of the essence of the contract, is applicable to this case, is based upon the enunciation of this court in the case of Langley v. Irons Land & Development Co., 94 Fla. 1010, 114 So. R. 769, in the following language:

> Where a contract in writing is executed by only one of the parties, under a mistake as to a fact which is of the essence of the contract, the mistake constitutes a ground for the court of equity to rescind and cancel the apparent contract as written and to place the parties in *statu quo,* but it does not constitute a ground for reformation, the reason being that by the mistake of one of the parties, there was no mutual assent to all the terms of the contract—no meeting of the minds —and hence there is no prior contract to which the writing may be made to conform. As stated by an eminent text-writer: "a mistake on one side may be a ground for rescinding a contract, or for refusing to enforce its specific performance; but it can not be a ground for altering its terms." Where such a state of facts exists, and the mistaken party is seeking reformation of the written instrument, the court, at the instance of the other party, will treat the case as though

no writing has ever existed and will restore the parties to their original positions. Sometimes, however, before granting this relief the court affords the party not mistaken the option to accept an alteration in the agreement, or, more accurately, a contract in the terms understood by the other party—instead of an annullment of the writing.

This rule does not apply to an acceptance like the one now before the court.

In this case Taylor, by his written order, directed Deen & Yarborough to pay to the DeSoto National Bank of Arcadia, a certain sum of money. The bank presented the order to Deen & Yarbrough and Deen & Yarbrough unconditionally accepted the order and agreed to pay the same. The defense interposed is not available in a suit of this kind. In 3 R. C. L., page 1143, the writer says:

The legal meaning of an acceptance is that the acceptor engages to pay the instrument according to the tenor of his acceptance. In other words, it is a promise to pay. The contract of the acceptor, by his acceptance is, that he will pay the bill, upon due presentment thereof, at its maturity, or its becoming due. The drawee enters into no contract relations with the payee in respect to it until it is presented to him, nor then unless he does so by acceptance. If he accepts, he undertakes to pay according to the terms of the bill or of the acceptance; but up to the time of that act the payee looks exclusively to the drawer for his protection. However, if the drawee refuses to accept when he has funds for the purpose, he becomes liable to the drawer for the wrong done to his credit. The drawee by acceptance becames liable to the payee or his indorsee, and also to the drawer himself. But the drawer and acceptor are

the immediate parties to the consideration, and if the acceptance be without consideration, the drawer cannot recover of the acceptor. The payee holds a different relation; he is a stranger to the transaction between the drawer and acceptor, and is therefore in a legal sense a remote party. In a suit by him against the acceptor, the question as to the consideration between the drawer and acceptor cannot be inquired into. The payee or holder gives value to the drawer, and if he is ignorant of the equities between the drawer and acceptor, he is in the position of a *bona fide* indorsee. Hence, it is no defense to a suit against the acceptor of a draft which has been discounted, and upon which money has been advanced by the plaintiff, that the draft was accepted for the accommodation of the drawer. The fact that accommodation indorser who has been compelled to pay a bill of exchange knew at the time of the indorsement that the acceptance of the bill was for accommodation will not prevent his recovery thereon against the accommodation acceptor.

And on page 1312 of the same volume it is said:

As a general proposition, an acceptance can be discharged only by payment, or a release, except in cases where to enforce the payment by the acceptor would be in violation of the agreement of the parties at the time of the acceptance. The contract of acceptance between the acceptor and the payee cannot be abrogated by the acceptor paying the drawer of the bill all he owed him. In a suit against the acceptor, he will not be permitted to insist that there was no consideration for acceptance. If one accepts a bill to enable the drawer to obtain credit or money, though there is no consideration between the drawer and acceptor, and though the subse-

quent holder for value knows it to be accommodation paper at the time he takes it, he can enforce it against the acceptor. In other words, one who accepts for the accommodation of another, and thereby procures a benefit to such other, cannot refuse to meet his obligation to him who conferred such benefit because of want of consideration. According to some English authorities, the acceptor of a bill for the accommodation of the drawer sustains the relation of surety to him, and is entitled to all the rights of one occupying that position in any case. In accordance with this view, it has been held that an accommodation acceptor is released by a contract of forbearance to the drawer, made by the holder of the bill, with knowledge of the fact that the acceptance was for accommodation. But the weight of the American decisions is to the effect that an accommodation acceptor occupies the same position as one who accepts with funds as to all persons who receive the bill for value, whether they know that it was an accommodation acceptance or not. Even if the holder knew at the time he received the bill that it was accepted for accommodation, his rights and duties are in no respect altered, and no release of an indorser or drawer will discharge the acceptor. Nor can the drawee of a bill of exchange or check, who accepts or pays it, resist payment in the one case, or recall it in the other, because he is mistaken as to the identity of the drawer or in the statement of the accounts between them.

A like statement of the law in this regard will be found in Bigelow on Bills, Notes and Checks, 3rd Ed., page 125 et seq.

So it appears that there was no error in the order appealed from and the same should be affirmed, and it is so ordered.

Affirmed.

WHITFIELD, P. J., AND STRUM, J., concur.

TERRELL, C. J., AND ELLIS AND BROWN, J. J., concur in the opinion and judgment.