**In re DARTMOUTH AUDIO, INC., Debtor.**

**Bankruptcy No. 80–65.**

United States Bankruptcy Court, New Hampshire.

Sept. 8, 1984.

Norman P. Soloway, Manchester, N.H., Charles F. Vihon, Gaston Snow & Ely Bartlett, Boston, Mass., for Audio Lab, Inc. and Clayton Keith.

John F. Cullen, Boston, Mass., for Thomas Hickey, Trustee.

Alan Rubenstein, Boston, Mass., Irvin Gordon, Concord, N.H., for Tech Hi-Fi, Inc.

MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case is before the court upon the "Motion by Trustee to Vacate Stay and to

Proceed with Hearing on Final Accounting" filed by Thomas A. Hickey, Esq., the trustee in bankruptcy in this proceeding, on April 12, 1982 before the then Bankruptcy Judge, the honorable Joseph J. Betley. Since Judge Betley was not able to rule upon this matter prior to his death, a "Motion for Decision" was filed on February 23, 1984 by Audio Lab, Inc. and Clayton Keith, d/b/a North Country Tech, to bring this matter to the attention of the undersigned bankruptcy judge. A hearing was held on May 3, 1984, at which time it was stipulated the undersigned judge could rule based upon the entire record in this case, including a transcript of a prior hearing held before Judge Betley on May 25, 1982 in this regard. The court has now reviewed the entire record in the proceeding and is prepared to rule.

The immediate issue for decision is whether the stay preventing the final accounting and final meeting of creditors from proceeding should now be lifted and the trustee permitted to proceed with the final distribution of the creditors in this case. The trustee is holding a net cash balance in excess of $40,000 that is otherwise available for immediate distribution and a dividend to general creditors.

The original stay of the final accounting proceeding occurred when Audio Lab and Keith objected to the closing of this estate on a basis that there were unsettled questions as to whether the trustee had disposed of franchise rights allegedly held by the debtor under a retail distribution arrangement with Tech Hi Fi, Inc., and/or whether Keith acquired any rights relating to the "Tech Hi Fi" name and materials by virtue of his purchase at bankruptcy auction sale of certain assets relating to retail outlets operated by the debtor in Hanover, New Hampshire and Burlington, Vermont.

The court has also been made aware that its ruling on the immediate matters before it may serve to resolve some pending matters in the separate civil action brought by Tech Hi Fi, Inc. against Audio Lab and Keith in the United States District Court, District of New Hampshire, Civil Action No. C81–585–D, seeking injunctive relief and damages for alleged infringement of its registered service mark and unfair competition by the defendants in their use of the "Tech Hi Fi" name and materials. Chief Judge Devine entered a preliminary injunction against such usage on January 4, 1982 in that action, but on March 3, 1982 entered a further order staying any further action in the civil proceeding "until this court is informed by defendants herein that the United States Bankruptcy Court for the District of New Hampshire has responded to their request for a ruling upon the franchise rights of the bankrupt and the effect, if any, of those rights upon the assets sold at auction."

The sale in question was held in the bankruptcy court on May 29, 1980. The trustee had earlier obtained a private offer for purchase of all assets of the estate for a fixed sum, and had noticed a hearing in the bankruptcy court to consider that offer, and had advised that he would "entertain any higher bids for the above-described property, including separate bids for the leases" for the assets which were described as being located at the Hanover and Burlington location.

Other bidders appeared at the May 29, 1980 hearing and the bankruptcy judge himself conducted an auction of various assets. In the final bidding another party was a successful high bidder as to the inventory owned by the debtor; and Clayton Keith (apparently acting on behalf of Audio Lab, Inc.) was the successful high bidder for the two leasehold interests at the Hanover and Burlington locations for the total sum of $13,000. There was spirited competitive bidding on both groupings of assets. Judge Betley called the terms of the sale as to both groupings prior to the bidding, and with regard to the leases he clearly stated that the assets being offered for sale were the leasehold interests at those two locations. There was no mention whatsoever of any franchise rights or other assets being offered prior to the commencement competitive bidding with re-

gard to the leases. (Transcript, pp. 8, 9, 24–26).

After the sale hearing a dispute developed between the purchaser of the inventory assets and Keith as to what personal property located at the Hanover and Burlington locations belonged to the inventory bidder under the approved sale. Judge Betley entered an order on December 9, 1980 determining which items could be retained by Keith as constituting property subject to the leasehold interest. Keith and Audio Lab took an appeal from this order which was ultimately resolved by stipulation for dismissal of the appeal by Keith and the other bidder approved by Judge Betley on March 20, 1981. His approval is noted by his signature at the bottom of the stipulation.

The Stipulation for the dismissal of the appeal includes a recitation that the other bidder abandoned all claims to inventory and other tangible physical assets located in Hanover and Burlington, not already in his possession, and includes among various enumerated items a reference to a "Tech Hi Fi Display Panel". The Stipulation further recites "The Appellant may have the peaceful possession and use of such assets, to the extent they are in the Appellants possession and under Appellants control."

Audio Lab and Keith contend that they acquired by virtue of the bankruptcy sale sufficient rights to justify their use of the "Tech Hi Fi" name and materials. It is their usage of the same that has been challenged in the civil action in the District Court. It is not entirely clear whether they are also contending that they acquired the franchise rights as such, but for the purposes of this ruling it will be assumed that they do so contend. Their position is based upon three major propositions: (a) The notice of the May 29, 1980 sale hearing included a recitation that the trustee "intends to sell the trustee's title and interest in all assets, tangible and intangible, held by him as trustee in bankruptcy of Dartmouth Audio, Inc."; (b) The Stipulation of March 17, 1981, approved by the bankruptcy judge, provided for their peaceful pos-

session and use of assets including "Tech Hi Fi" materials; (c) Tech Hi Fi was a member of the creditors committee in this case and being aware of the sale was bound by its failure to object or otherwise act to protect its trademark interest on the materials involved; (d) If the sale did not convey any rights to use the "Tech Hi Fi" materials, there was a failure of "Meeting of the Minds" and Keith as bidder should be able to rescind and recover his purchase price.

■■■ The first and forth contentions are easily disposed of, since they stem from a basic misconception as to the status and function of bankruptcy public auction sales. There is a strong policy favoring competitive bidding and finality to such sales. *In re Superior Mushroom Growers Corp.*, 228 F.Supp. 372 (E.D.Pa.1964); (Inconsistencies between advertisements and actual call of sale will be disregarded); *4B Collier on Bankruptcy*, 14th Ed., section 70.98 (17), p. 1193 (1981). In the absence of specific warranty clauses bankruptcy sales are governed by the rule "caveat emptor." *Collier*, supra, section 70.98 (18), p. 1201. While these authorities arose under the prior Bankruptcy Act, no significant change in the controlling statutory or rule provision has occurred under the present Bankruptcy Code.

■■■ It is crystal clear from the record that the contending bidders were not advised at the auction sale that the leases being sold included any franchise rights or other rights to use the "Tech Hi Fi" name and materials. If that had been intended, and had been stated at the call of the sale, presumably higher bids could have been obtained. The fact that Keith believed otherwise, and points to facts outside the sale hearing to support that belief, does not change the competitive bidding situation actually involved. The bidders were told that they were bidding on "Leases" and presumably bid amounts in that context. It would totally defeat the purpose of public auction bidding to permit the successful high bidder to later come in and contend that he had private assurances or an under-

standing that he would be receiving something more in the way of assets than what was specifically described in the call of sale for the information of all other bidders.

■ As will be noted below, the creditors' committee earlier had filed a pleading in the case (signed by Keith as one of the committee members) stating that the franchise agreement with Tech Hi Fi had been allowed to terminate by mismanagement by the debtor in January of 1980. This tends to explain and corroborate the lack of any mention of franchise rights at the call of the sale on May 29, 1980. In any event, it has been specifically held that the trustee of a bankrupt cannot sell the assets of a debtor's business, including a right to use a trademark, free of the obligations to pay a royalty for the trademark use. *In re Tidy House Products Co.* 79 F.Supp. 674 (S.D. Iowa 1948). If any sale of Tech Hi Fi's rights in the present situation was intended, or were to be consummated, this consideration obviously would have had to be covered. This further supports the conclusion that all that was sold to Keith on May 29, 1980 was what was actually called for sale at the public auction, i.e., the leasehold interests at Hanover, New Hampshire and Burlington, Vermont. If there was any ambiguity in that regard, it was Keith's obligation to clear up the matter prior to the call of the sale if he had any doubts. *Cf. C.T. Villa Carting Co.,* 191 F.Supp. 134 (W.D.N.Y.1961).

■ Keith argues alternatively that since Tech Hi Fi was also a member of the creditors' committee, it was charged with notice of the stipulation of March 20, 1981 and therefore is bound by the recitations therein with regard to "peaceful use" of the Tech Hi Fi items. The problem with this contention, regardless of any weight it may have with regard to the damages claimed by Tech Hi Fi in the civil action, is that it has nothing to do with the call of the public auction sale of the "Leases" on May 29, 1980. For the reasons given above, the bidders interested in bidding on those assets were entitled to a statement *at that time* as to the assets upon which they

would be called upon to bid. The subsequent settlement of the controversy between Keith and the inventory-equipment bidder has no material bearing upon the sale that was actually conducted with regard to the leases on May 29, 1980. Again, if those bidders had all known at that time that franchise rights were also being sold, the price finally bid might well have been considerably higher.

■ Keith also has submitted substantial materials relating to another bankruptcy case in which Tech Hi Fi acted aggressively to protect its trademark and franchise rights from disposition by a bankruptcy trustee. Keith then argues that Tech Hi Fi's failure to object to the sale in the present case constitutes a waiver of its rights in that regard. Aside from the question of whether there were any franchise rights to protect in the present case, that contention by Keith again suffers from the attempt to portray the matter requiring decision by this court as simply a "two-way" dispute between Keith and Tech Hi Fi. At the risk of "sounding like a broken record" the court would simply note again its opinion that the central and controlling question in the present *bankruptcy* case revolves around considerations of preserving the integrity and effectiveness of judicial sales in the bankruptcy court. The call of the sale is what controls. See *In re Rafdo Enterprises, Inc.,* 297 F.2d 505 (7th Cir.1962).

■ The court accordingly concludes that the sale of the assets to Keith at the May 29, 1980 bankruptcy sale did not convey any existing franchise rights of the bankrupt nor did those rights give any enhanced value to the assets actually sold to Keith at the public auction. This conclusion, while answering the inquiries in the civil action, does not resolve all matters necessary with regard to the final disposition of the bankruptcy estate. The question remains as to whether the debtor had franchise rights extending from prior agreements with Tech Hi Fi, Inc., and whether such rights were vested in the

trustee in bankruptcy as an asset to be liquidated in the bankruptcy proceedings.

The franchise granted Dartmouth Audio, Inc. by Tech Hi Fi was scheduled to expire in 1979. However, on October 19, 1979, counsel for Tech Hi Fi sent a letter to Dartmouth Audio, subsequently consented to in writing by Dartmouth, including the following understanding:

"This letter will evidence the understanding of Stereo Component Systems, Inc. ('Tech Hi Fi') that the franchise previously granted Dartmouth Audio, Inc. ('Dartmouth Audio') will be extended effective as of its original termination date through January 15, 1980. If by January 15, 1980, Dartmouth Audio has increased its capital position in a manner satisfactory to Tech Hi Fi, the franchise can be further extended (with such amendments as may be mutually agreed to by the parties) for an additional term of five (5) years. If the capital of the situation of Dartmouth Audio has not been improved, then, as indicated in your letter of October 12, 1979, either party may terminate the franchise agreement."

This statement is ambiguous in that it starts with the proposition that Tech Hi Fi unilaterally can determine whether an increased capital position is satisfactory to extend the franchise agreement, but then concludes with language that indicates that action by the parties is contemplated to terminate the franchise agreement. The court has no direct evidence as to what, if any, action was taken by Dartmouth Audio to attempt to comply with the capital position requirement, but on March 4, 1980, the creditors' committee in the bankruptcy proceeding filed an "Application for Appointment of Trustee" which include the recitation, among assertions of other defaults by the debtor, that "Dartmouth had operated as a 'Tech Hi Fi' franchise but as a result of its mismanagement, had its franchise agreement terminated on or about January 15, 1980." This pleading is signed by Clayton Keith, as one of the members of the creditors' committee.

Even if the franchise situation as of the filing of bankruptcy on February 1, 1980 involved a live franchise assumable by the trustee, the record is clear that no affirmative action to assume the franchise ever occurred. The filing of the bankruptcy petition does not, by itself, interrupt any period that may be running under a termination notice regarding a franchise arrangement. *In re Anne Cara Oil Co., Inc.*, 32 B.R. 643 (D.Mass.1983). Moreover, when this chapter 11 proceeding was ultimately converted on April 14, 1980 to a Chapter 7 liquidation proceeding, by order of Judge Betley also appointing the trustee on that date, the fixed sixty-day rule of Section 365 of the Bankruptcy Code came into play. This provision provides that if a trustee does not assume or reject an executory contract within the sixty-days, the contract is deemed rejected without any other action or order of the court.

It is now well established that franchise or distributor arrangements are executory contracts within the scope of Section 365 of the Code. *In re Bronx—West Chester Mack Corporation*, 20 B.R. 139, 6 C.B.C. 2nd 832 (S.D.N.Y.1982); *In re Rovine Corporation*, 6 B.R. 661 (W.D.Tenn.1980) (debtor having "Burger King" franchise could reject as executory contract); *In re Sun Ray Bakery, Inc.*, 5 B.R. 670 (D.Mass. 1980). Accordingly, the franchise agreement involved in this case has long since been rejected as a matter of law, and the trustee no longer is vested, if he ever was, with any of the Tech Hi Fi franchise rights as an asset in this estate.

Finally, Clayton Keith as a creditor objects to closing of the estate on the trustee's present final accounting, on the ground that the trustee failed to satisfactorily perform his duties in not properly administering the franchise asset of the estate. This position obviously conflicts with the position of Clayton Keith, purchaser, that he obtained the franchise rights and/or any benefits stemming therefrom in the bankruptcy sale from the trustee. However, in his separate capacity as a creditor Keith has the right to raise that

issue, inasmuch as this court has now determined that any franchise rights that may have existed at a time of the filing were not in fact assumed by the trustee, and were rejected as a matter of law by his failure to act within the sixty-days following his appointment on April 14, 1980. Keith argues that the trustee should be denied all fees, and surcharged for the loss of this asset, and that furthermore the fees requested by the appraiser engaged by the trustee should also be denied.

 The record reflects that the debtor's bankruptcy schedules, filed on February 20, 1980, list the franchise under schedule B–2 but state "Cannot assign or sell" and no value is given in the "Amount" column for this item. As indicated above, on March 4, 1980, the creditors' committee, in their application for the appointment of the trustee, with Keith signing as a member of the committee, stated that the franchise agreement had been terminated on January 15, 1980 due to the debtor's mismanagement. The debtor's answer to the motion for appointment of a trustee, filed March 13, 1980 denied the mismanagement but stated "The 'Tech Hi Fi' franchise was not terminated because of the management of the company but simply expired." In the face of this record it is understandable why the trustee would proceed on a basis that the franchise had no further vitality. In the circumstances, no basis for surcharge or denial of fees at this late date is indicated in the record. If Keith felt to the contrary in 1980, he could have so moved at that time to insist that the trustee act vigorously to assume and attempt to assign the franchise to a qualified assignee. It is not possible under Section 365 of the Bankruptcy Code to simply "sell" a lease or executory contract. It must first be assumed, and then assigned, with a showing of adequate assurance of future performance. *Section 365(f)(2)(B)*.

Keith on the contrary apparently attempted to obtain the benefit of the rights to use the "Tech Hi Fi" name and materials by virtue of his purchase of the leases at the Hanover and Burlington locations. His

cry for the extraordinary remedy of surcharge of a trustee for nonperformance of duties accordingly rings a little hollow.

By virtue of the foregoing findings and conclusions, this case is in a posture for a final distribution to creditors of their long-delayed dividends, and a separate order will be entered directing that the final procedures for closing this estate go forward.