**In re FRANKLIN COUNTY VISITING NURSES ASSOCIATION, INC., Debtor(s).**

**Bankruptcy No. 86–07080.**

United States Bankruptcy Court,
N.D. Florida,
Tallahassee Division.

Feb. 25, 1987.

Herbert R. Kraft, Tallahassee, Fla., for debtor.

Alfred O. Schuler, Apalachicola, Fla., for Anne Morgan.

**OPINION AND ORDER**

LEWIS M. KILLIAN, JR., Bankruptcy Judge.

THIS MATTER came before the Court upon a petition by Anne B. Morgan, et al ("Morgan"), the high bidder, in a sale of assets pursuant to § 363(b)(1), to set aside the sale of assets of the debtor-in-possession, Franklin County Visiting Nurses Association, Inc. ("FCVNA"). The sale was confirmed by Order of this Court dated July 17, 1986.

The essential facts in this case are as follows: The debtor-in-possession ("debtor") is a home health agency—a provider of nursing services and seller of health care supplies in Franklin County, Florida. The debtor filed a Chapter 11 petition on May 7, 1986, and subsequently filed a Report and Notice of Intention to Sell Property of the Estate, dated May 27, 1986 ("Notice"). The Notice describes the property to be sold as "Operating Authority, Certificate of Need, Patient List and Goodwill of Business" and describes the sale as a private sale for $15,000 cash to Anne Morgan.

On June 13, 1986, an Objection to Sale of Property and Request for Hearing was

filed by Franklin County Home Health, Inc. ("Home Health"). Also filed with the court, but not served on the parties was an objection to the proposed sale filed by the Advisory Committee for the debtor on June 18, 1986, questioning the qualifications of Ms. Morgan.

On June 30, 1986, (nunc pro tunc June 19, 1986), this Court entered an order providing for rebidding—written bids to be submitted to the Clerk on or before June 30, 1986, and to be opened on July 1, 1986. The order further provided for a hearing should either party question the qualifications of the highest bidder.

Sealed bids were received by this Court on behalf of Anne B. Morgan, George A. Hubbard and John W. Branch in the amount of $31,000.00 on June 27, 1986, and on behalf of "Home Health" in the amount of $22,000.00 on June 30, 1986. Both bids described assets bid upon as including "operating authority" and "certificate of need".

In response to a letter received July 17, 1986, from counsel for Home Health summarizing his client's position regarding their objection to the sale to the high bidder, this Court entered an order on July 17, 1986, finding the qualifications of the high bidder sufficient to support the bid and confirming the sale.

Thereafter, upon submission of an application for change of licensed operator, Morgan was advised by letter from the licensing authority dated September 2, 1986, that the FCVNA license had expired June 30, 1986, and along with it the certificate of need and certification in the Medicare/Medicaid program due to failure of the licensee/debtor to file an application for renewal.

A petition to have this Court set aside the sale or to require the debtor to reinstate the license was filed by the high bidder on October 30, 1986. The petition asserted that without the license, all other assets referred to and made a part of the purchase, are of no value to petitioner; that petitioner would not have bid had it known there was no license for the business.

A petition was filed on January 14, 1987, by John W. Branch asserting a claim to $7,500 of the $15,000.00 deposit refund as co-bidder with Morgan. The petition was subsequently withdrawn as Morgan's petition embraces the funds contributed by Branch.

The debtor's response to these contentions is that the debtor was without knowledge of the revocation, having been advised by telephone in June, 1986, by the licensing authority not to renew until the "bankruptcy was resolved". In reliance on such advice the debtor claims to have thought it was selling a valid license. Further, the debtor contends that the sale is governed by the doctrine of caveat emptor; that the sale was made expressly without warranty; that the bidders' failure to verify the licensure status before bidding constitutes negligence; that the purchasers failed to exercise due diligence in seeking relief; and that the petition to set aside the order should, therefore, be denied.

In an action to rescind a conveyance, the Supreme Court of Virginia in *Miller v. Reynolds*, 223 S.E.2d 883, 886 (Va. 1976) cited 16 M.J., *Rescission, Cancellation and Reformation*, § 11, p. 138:

"In cases of plain mistake or misapprehension, though not the effect of fraud or contrivance, equity will rescind the conveyance, if the error goes essentially to the substance of the contract, so that the purchaser does not get what he bargained for, or the vendor sells that which he did not design to sell ..."

In the instant case, the buyers did not get what they bargained for. Although they would be able to operate as a home health agency, they could not receive reimbursement for expenses by Medicare or Medicaid patients. The sellers did not sell what they intended to, as express representations were made by the sellers, orally and in writing that the sale was to include the certificate of need. Although these representations were apparently made by the sellers in good faith, relying upon an alleged telephone conversation with the li-

censing authority, the representations were in fact erroneous.

9 Fla.Jur.2d, *Cancellation, Reformation and Rescission of Instruments,* § 29 states:

"... it seems clear that where the facts forming the basis of the contract are assumed to exist by both parties thereto, and those facts do not exist in reality, there is no meeting of the minds so as to constitute a valid contract, and equity will furnish relief by cancellation or rescission."

The leading case in Florida on rescission of contracts because of misrepresentation of fact is *Langley v. Irons Land & Development Co.,* 94 Fla. 1010, 114 So. 769 (Fla. 1927), in which the Supreme Court held:

"Innocent Misrepresentation of Fact. According to the weight of authority, misrepresentation of material facts, although innocently made, if acted on by the other party to his detriment, will constitute a sufficient ground for rescission and cancellation in equity. The real inquiry is not whether the party making the representation knew it to be false, but whether the other party believed it to be true and was misled by it in making the contract; and, whether the misrepresentation is made innocently or knowingly, the effect is the same. It is as conclusive a ground of relief in equity as a willful and false assertion, for it operates as a surprise and imposition on the other party; and in such case the party must be held to his representations."

Id., 114 So. at 771. See also *Sutton v. Cast-Crete Corporation of Florida,* 197 So.2d 556 (Fla. 2d DCA 1967) and *Held v. Trafford Realty Co.,* 414 So.2d 631 (Fla. 5th DCA 1982).

The facts in the case at hand can likewise be analogized to those in the case of *Mar-Char Enterprises, Inc. v. Charlie's The Lakes Restaurant, Inc.,* 451 So.2d 930 (Fla. 3d DCA 1984), *review den* 461 So.2d 113 (Fla.1984), wherein the court held that purchasers were entitled to rescission of a restaurant sales agreement where the parties to the sale had "labored under a mutual mistake concerning the availability and transferability of a full scale liquor license for the premises which was material, indeed vital, to the transaction."

In the instant case, debtor contends that "waiting almost 6 months to set aside the Final Order is, as a matter of law, delay so long as to act as laches, and a bar in equity for the granting of any relief." It does not appear, however, that there was any undue delay by the purchasers in seeking to set aside the sale. The notification by the licensing authority that the license and certificate of need had expired is dated September 2, 1986. Petitioner asserted her rights within two (2) months by filing a petition with this Court on October 30, 1986. This time period cannot be regarded as unreasonable delay or other than such course of action which a reasonably prudent person would have taken under the same or similar circumstances.

In the case of *Sutton, supra,* lessors contended that the doctrines of estoppel and laches should operate to deprive the lessee of equitable relief because the lessee had the opportunity to ascertain the existence of a previous conveyance which had been recorded through examination of the public records. The court in that case, however, noted that such contention was seemingly answered by the 5th U.S. Court of Appeals in the Florida case of *Star Apartment, Inc. v. Martin,* 204 F.2d 829 (5th Cir.1953):

"... this argument overlooks the fact that appellant *contracted to deliver to* appellee *the title specified in the contract* of sale, *which he cannot do.* There was *no duty upon the vendee to search the public records to ascertain whether the vendor could perform his obligation.* Of course, as between the mortgagee and third parties the recorded mortgage and assignment constitute notice. That fact, however, does not relieve appellant of his *obligation to his vendee to deliver the title described in the contract of sale."* (Emphasis supplied).

Id, 204 F.2d at 830.

As pointed out in 4B *Collier on Bankruptcy,* § 70.98 at 1198 (14th Ed.1976),

"the rights and quantum of property acquired by the purchaser depend primarily on the terms of the sale as ordered or agreed upon."

Debtor's argument that bankruptcy sales are strictly caveat emptor relies heavily upon *In re Dartmouth Audio,* 42 B.R. 871 (Bankr.N.H.1984). It appears, however, that that case is distinguishable on its facts from the case at hand. The call of sale in *Dartmouth* was for leases and inventory, with no indication to competing bidders that the leases being sold included any franchise rights or other rights. Such was not the case on the facts before us. The evidence here indicates the intent of sale was clear to all parties to the sale. The Notice of Intention to Sell specifically listed both "operating authority and "certificate of need". No one believed otherwise. As counsel noted in Debtor's Memorandum in Opposition to Petitioner's Motion for Relief from a Final Order, "[t]he debtor was assured that it would have a license. The action taken by the State *after* the bid was accepted by final order of this Court has been a surprise to both parties." There was no ambiguity here as there was in *Dartmouth.*

> The *Dartmouth* court went on to note: "It would totally defeat the purpose of public auction bidding to permit the successful high bidder to later come in and contend that he had private assurances or an understanding that he would be receiving something more in the way of assets than what was specifically described in the call of sale for the information of all other bidders.... The bidders interested in bidding on those assets were entitled to a statement *at that time* as to the assets upon which they would be called upon to bid.... The call of the sale is what controls.

Id., 42 B.R. 871 at 874–75.

50 ALR3d 1188, 1198 states, "[w]hile caveat emptor may bar rescission where the vendor as well as the purchaser is ignorant of a defect if rescission is based upon other theories, the doctrine does not preclude the court from granting rescission for mutual mistake of the parties."

The facts of the instant case support mutual mistake. At the time of the bid a license and a certificate of need were in existence. Both parties thought that the license and certificate of need were valid as of the dates the bids were opened—the debtor relying upon oral assurances by the licensing authority that an extension had been granted; the purchasers relying upon the specific terms of the sale. The record indicates that the purchasers would not have entered a bid had the mistake not been made. To force such a sale would be an injustice.

"A mutual mistake as to a vital matter of fact upon which value depends will support rescission where the defect is of such a nature as to render the property something other than the parties had contemplated at the time of contracting." 77 Am.Jur.2d, *Vendor and Purchaser,* § 538.

That both parties labored in good faith under a misunderstanding regarding a material fact upon which the value of their agreement depended presents a compelling equitable basis for vacating the sale. It is therefore

ORDERED AND ADJUDGED that this Court's July 17, 1986, Order be, and it hereby is, vacated and that monies paid pursuant to the bid along with interest earned thereon be refunded to the high bidders, Anne B. Morgan, et al.