## PERROTHERS v ELLISON REALTY, INC., et al.

Case No. 89-734 CC-H

County Court, Marion County

March 30, 1990

### APPEARANCES OF COUNSEL

**J. Herbert Williams, II, Esquire,** Richards and Blinn, P.A., for plaintiff.

**Eugene A. Wiechens, Esquire,** Landt, Applegate and Wiechens, P.A., for defendants.

### OPINION OF THE COURT

HALE R. STANCIL, County Judge.

### *FINAL JUDGMENT*

THIS CAUSE came on to be heard the 15th day of February, 1990, on the complaint of the plaintiff RUTH MARION PERROTHERS for

damages against the defendant ELLISON REALTY, INC., a licensed real estate broker, and ELLEN WILLIAMS, a licensed real estate agent working under the license of ELLISON REALTY, INC. The essential facts not in dispute are that: (1) On October 17, 1988 defendant ELLEN WILLIAMS listed HENRY FARRAR'S and his wife, PATRICIA FARRAR'S home for sale and caused a multiple listing statement to be executed indicating the subject property had city water and sewer. (2) On November 19, 1988, the plaintiff through defendant ELLEN WILLIAMS entered into a real estate sales contract for the purchase of the FARRAR'S home and lot situated at 3815 NE 4th Street, Ocala, Florida.

From the evidence it is clear that the plaintiff prior to purchase and while inspecting the property and looking over the pool were advised by ELLEN WILLIAMS that the property had city water and sewer to which the plaintiff's brother made remarks to the effect that it was nice that the house was on sewer, especially with a pool. Plaintiff testified she would not have purchased the property had it not been on city water and sewer. It is undisputed the seller HENRY FARRAR who is not a party to this law suit executed the Multiple Listing Service fact sheet giving listing information to the sale person and broker indicating the property was on city sewer. It is also undisputed that Multiple Listing Service fact sheet was shown to the plaintiff prior to the contract being signed. There were no apparent characteristics on the property indicating a septic tank or that the property was not connected to city sewer. City sewer is available in the area and no one expressed any doubt the property was not connected to the city sewer.

After the real estate closing defendant ELLISON REALTY, INC. managed the property for plaintiff and within a few months a problem with the sewer system became apparent. Upon closer examination it was discovered that although city sewer and water was available the property was not connected to the city sewer, but rather to a septic tank. The impact cost alone of hooking up to city sewer is $934.00. The sellers have long since departed Florida, reported to be somewhere in the northeastern part of the United States. No attempt has been made to make them a party to this action and neither party requested leave of court to do so.

Plaintiff in seeking to hold the defendants liable present two theories of liability: (1) Negligence, that is the defendants' were negligent in failing to ascertain the truth or falsity of the representation regarding city sewer; and (2) Innocent misrepresentation.

The elements of fraud are: (1) A misrepresentation of material fact;

(2)[a] knowledge of the representor of misrepresentation, or [b] representations made by the representor without knowledge as to truth or falsity, or [c] representations made under circumstances which the representor ought to have known, if he did not know, of the falsity thereof; (3) an intention that the representor induced another to act on it; (4) resulting injury to the party acting in justifiable reliance on the representation.

The Court finds no evidence of fraudulent or negligent misrepresentation and plaintiff if she is to prevail must do so on the theory of innocent misrepresentation.

The issue thus presented is: SHOULD LIABILITY FOR INNO-CENT MISREPRESENTATION EXTEND TO A REAL ESTATE AGENT, WHO ACTED IN GOOD FAITH AND SERVED ONLY AS A CONDUIT FOR THE OWNER'S MISREPRESENTATION?

Restatement (Second) of Torts (1977) section 552C(1) define the tort of innocent misrepresentation as follows:

One who, in a sale, rental or exchange transaction with another, makes a misrepresentation of a material fact for the purpose of inducing the other to act or to refrain from acting in reliance upon it, is subject to liability to the other for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation, even though it is not made fraudulently or negligently.

In *Langley v Irons Land & Development Co.*, 94 Fla. 1010, 114 So. 769 (1927) the Supreme Court in discussing innocent misrepresentation, held:

According to the weight of authority, misrepresentation of material facts, although innocently made, if acted on by the other party to his detriment, will constitute a sufficient ground for rescission and cancellation in equity. The real inquiry is not whether the party making the representation knew it to be false, but whether the other party believed it to be true and was misled by it in making the contract; and, whether the misrepresentation is made innocently or knowingly, the effect is the same. It is as conclusive a ground of relief in equity as a willful and false assertion, for it operates as a surprise and imposition on the other party; and in such case the party must be held to his representations.

In *Held v Trafford Realty Co.*, 414 So.2d 631 (Fla. 5th DCA 1982) the Court in discussing a false representation that was an innocent misrepresentation held that, "Whether made innocently or knowingly, misrepresentation of a material fact acted on by the other party to his

detriment is a ground for rescission of a contract." The Court has no argument with the facts and the law applied in *Held, supra* which permitted rescission. Plaintiff is not seeking rescission against the seller, plaintiff is seeking damages from the broker and sales agent. Likewise should the contract be executory the Court would have no difficulty in it being declared null and void.

In the facts before this Court defendant ELLEN WILLIAMS, showed the plaintiff the Multiple Listing Service fact sheet as completed and signed by the seller, HENRY FARRAR. The defendant, ELLEN WILLIAMS did not expand or go beyond what was contained within this sheet. She only reiterated what the plaintiff had already been shown and what she in good faith believed. There was nothing either unusual or out of the ordinary to indicate or even suggest that the property might not in fact be on the city sewer.

Plaintiff primarily relies upon the case of *Bevins v Ballard,* 655 P. 2d 757 (Alaska 1982) wherein the Alaska Supreme Court was confronted with the question:

> [W]hether or not liability for innocent misrepresentation should extend to the owner's agent, the real estate broker, where that party serves a conduit for the owner's misinformation?

In answering said question in the affirmative the Alaska Supreme Court held,

> A purchaser who relies on a material misrepresentation, even though innocently made, has a cause of action against the broker originating or communicating the misrepresentation.

In adopting this ruling the Alaska Court makes no distinction between a broker "originating" or "communicating" the misrepresentation. The Court went on to say:

> In our view, the consequences of recognizing a cause of action in this situation are entirely beneficial. The presence of a cause of action against the broker would tend to lessen the likelihood of transactions tainted by misinformation and confusion. Additionally, recognizing a cause of action against the broker would provide another source of recovery to the purchaser of defective property. Frequently, the owners may move away, leaving the broker as the only reachable defendant. As between the broker who communicated the misrepresentation, and the purchaser whose only fault was to rely on the broker, we think in preferable that the broker bear any loss cause by misrepresentation. Brokers, in turn, can protect themselves from liability by investigating the owner's statements, or by disclaiming

knowledge, by requiring the seller to sign at the time of listing a statement setting forth representations which will be made, certifying that they are true and providing for indemnification if they are not.

In his dissenting opinion in *Bevins, Id,* Justice Connor reasoned,

When a realtor acts as a mere conduit for passing on information supplied by the seller, he should be under no duty independently to verify that information unless he has *reason to believe* (emphasis added) the information to be false. See *Lyons v Christ Episcopal Church,* 71 Ill. App. 3rd 257, 27 Ill. Dec. 559, 389 N.E. 2d 623, 625 (1979). Allowing an innocent misrepresentation action against the broker in such circumstances is quite close to imposing strict liability. There is no reason to make the broker the "insurer" of the seller's representation.

Sellers who make representations about their property should be held to the accuracy of the representation, as they are normally in the best position to know the facts. But a broker often has little personal knowledge of the property which he offers for sale. I see no reason to make the broker the guarantor of representations emanating from the seller. I would hold that innocent misrepresentation is not available as a cause of action by the buyer against the broker.

In *Miller v Sullivan,* 475 So.2d 1010 (Fla. 1st DCA 1985) the Court stated, "(t)o establish that Hilgendorf (the realtor) was negligent,[1] appellant would have to prove that she breached her duty of "honesty, candor, and fair dealing" to appellant as the purchaser of the house."

Real estate brokers in today's society occupy a unique position especially in Florida and Marion County in particular where it is said to be the fastest growing area in the nation. While a broker or agent must exercise that degree of care which a reasonably prudent broker or agent would use under the same circumstances neither is a guarantor of the representations made by the seller. Brokers and agents must be able to rely upon information furnished by the home owner. They are not under the current law of Florida as interpreted by this Court strictly liable. If brokers and their agents are to be held strictly liable for all information that is related or passed on to a prospective buyer the real estate market would collapse. Such a ruling would require all brokers and their agents to personally and independently verify and confirm all information related by the home owner. This would require not only that room size and square footage be certified, but that the services of an electrician, plumber, contractor, air conditioning/hearing

---

[1] The Court realizes that the plaintiff is seeking recovery on innocent misrepresentation not negligent misrepresentation.

service, pool maintenance service, appliance repairman, carpet service and pest control service be utilized, not to mention a surveyor to mark the boundaries.[2] Plaintiff contends that all the defendants had to do was make one telephone call to the City of Ocala to easily establish the accuracy of the statement regarding the sewer. Even had the defendant called the city and the city said "yes," under the plaintiff's theory of innocent

misrepresentation the defendant would still be liable.[3]

The decision of this Court to some may seem as unjust and with that in mind a part of the decision in *Demuth v Old Town Bank,* 85 Md. 315, 319-320, 37 A. 266 (1897) (citation omitted) seems appropriate.

This is a case of exceedingly great hardship, and we have diligently, but in vain sought for some tenable ground upon which the [appellees] could be relieved from the laws that [a reversal] of the decree appealed from will necessarily subject them to. But hard cases, it has often been said, almost always make bad law; and hence it is, in the end, far better that the established rule of law should be strictly applied, even though in particular instances serious loss may be thereby inflicted on some individuals, than that by subtle distinctions invented and resorted to solely to escape such consequences, long-settled and firmly-fixed doctrines should be shaken, questioned, confused or doubted. It is often difficult to resist the influence which a rigid adherence to fundamental principles at all times and a stern insensibility to the results which an unvarying enforcement of those principles may occasionally entail, are the surest, if not only, means by which stability and certainty in the administration of the law be secured.

This Court does not interpret Florida Statute Chapter 475.15(c) as applicable to the facts of this case. While that section gives the Florida Real Estate Commission the power to suspend a broker's license for advertising in a false matter this Court does not construe that statute as imposing any greater liability than that imposed by the Appellate Courts of Florida. If they should be guarantors then the law needs to be changed by the legislature not the Courts.

If plaintiff *had not* seen the Multiple Listing Service fact sheet, but

---

[2] Also one must remember that brokers have literally 100's and 100's of listings. Few homeowners or brokers could afford to bear such an expense.

[3] Granted, the broker might have a claim against the city of sovereign immunity could be overcome. In addition one must consider the possibility of a multiplicity of law suits against not only, but several different defendants.

had relied on the statement of the defendant ELLEN WILLIAMS that the property had city sewer, the decision of this court might well be different. ACCORDINGLY, the Court finds in favor of the defendants ELLISON REALTY, INC., and ELLEN WILLIAMS, who may go hence without day.

DONE AND ORDERED in chambers at Ocala, Marion County, Florida, this 30th day of March, 1990.